[No. 45535.   En Banc.   October 26, 1978.]

Ronald J. Lopp, *Appellant,* v. Peninsula School District No. 401, et al, *Respondents.*

*Ronald J. Lopp,* pro se.

*Kane, Vandeberg & Hartinger,* by *William A. Coats,* for respondents.

WRIGHT, C.J.—Appellant brought this suit pursuant to RCW 42.30.130 to enjoin and otherwise prohibit the sale of 9.4 million dollars in general obligation bonds of the Peninsula School District No. 401 and to fine the individual board members of the board of directors of the Peninsula School District No. 401 for allegedly violating the provisions of RCW 42.30 (Open Public Meetings Act of 1971).

On December 13, 1977, the board of directors of the Peninsula School District No. 401 (Board) approved resolution No. 77–48 which authorized and directed the appropriate Pierce County authorities to call a special election in Peninsula School District No. 401 for approval of 9.4 million dollars in general obligation bonds. The proceeds from the bond sale were to be used for construction of four new permanent school buildings, and the interest income earned by the school district from the proceeds was to be used for the construction of temporary school buildings. Sometime after the adoption of the resolution, the Pierce County Auditor notified the Board that it would be necessary to amend the ballot title to disclose to the voters that proceeds from the bonds would be used for construction of buildings in addition to the four permanent ones.

A special meeting of the Board was scheduled for January 16, 1978. Notice of this meeting was sent to various local newspapers, and local television and radio stations on January 12, 1978. Notice was also sent to each Board member. Plaintiff concedes he actually knew of the meeting to be held on the 16th.

When the Board met on January 16, 1978, it was discovered that one member of the Board was in Alaska and probably had not received notice of the special meeting. The members of the Board in attendance, therefore, decided to reschedule the meeting for January 18, 1978. No action was taken on the 16th on the proposed amendments to the ballot title. None of the news media attended the

meeting on January 16, 1978. Plaintiff/appellant likewise did not bother to attend.

The superintendent of the school district prepared notice for the January 18 meeting. Notice was identical to that given for the January 16 meeting except for the change in date. This later notice was sent to various local news media located in Pierce County in the evening mail of January 16. However, defendants concede that it is extremely doubtful that the written notice for the January 18 meeting was actually delivered to the local news media 24 hours in advance of the January 18 meeting. At the special meeting of January 18, the Board approved resolution No. 78–1 which amended the ballot title. A story appeared in that evening's edition of the *Peninsula Gateway* which summarized the actions of the Board at this special meeting. Plaintiff admitted, at the trial court and at oral argument before this court, that he read this article.

A special election was held on February 7, 1978. The electorate approved the sale of the bonds by a margin of more than two to one. Plaintiff also voted in this election. Thus, again he was put on notice that the ballot title had been changed because the face of the ballot title shows that it has been amended.

Plaintiff commenced this litigation on March 7, 1978, 1 month after the special election. By the time this appeal was heard, the school district had received a favorable bid on its bonds. And since that bid, the bond market has materially deteriorated from a seller's standpoint. The school district had to have a final determination, including the termination of all appeals and motions for reconsideration in this suit, before June 15, 1978, in order to accept this bid.

If the school district was unable to accept this bid, due to the pendency of litigation, it would be necessary for it to begin anew the bond sales procedure. This would mean, *inter alia,* developing a new prospectus, obtaining a new bond rating, and calling for new bids. The whole process would take 3 more months. During the period of any such

delay, the district would be without money to begin its building construction program, and thus all construction plans would be delayed. Furthermore the district would lose interest income it would otherwise earn on the proceeds from the bond sales for that 3–month period. That interest income amounts to approximately $1,600 per day.

The trial court granted summary judgment for respondents and dismissed appellant's application for writ of mandamus and injunction. The court stated several different legal bases for its holding. Appellant appealed, and we accelerated the entire appeal process so that there could be a final determination of this lawsuit before June 15, 1978. By an order dated May 30, 1978, we affirmed the trial court and announced that this opinion would follow. We further ordered that this litigation be deemed terminated.

We affirm the trial court's conclusion of law that appellant did not commence this suit in a timely manner and is therefore barred by the doctrine of laches. Thus we do not reach the correctness of any of the trial court's other conclusions of law.

Appellant sought to halt the bond sale pursuant to RCW 42.30.130. That statute provides:

> Any person may commence an action either by mandamus or injunction for the purpose of stopping violations or preventing threatened violations of this chapter by members of a governing body.

This provision allows anyone standing to challenge the validity of a governing body's action when the issue is whether the provisions of RCW 42.30 have been, or are being, violated.

■ Appellant availed himself of both his mandamus and injunction remedies under RCW 42.30.130. There is no question that his injunction remedy is subject to laches. *See Ronberg v. Smith,* 132 Wash. 345, 232 P. 283 (1925); 42 Am. Jur. 2d *Injunctions* §§ 61–67. Thus we must only decide whether appellant's mandamus remedy is also subject to laches.

Appellant asserts two reasons why his mandamus remedy should not be barred by laches. First, he argues that laches will not bar a writ of mandamus which is an action at law. He cites *Addis v. Smith*, 226 Ga. 894, 178 S.E.2d 191 (1970) as authority. Second, appellant argues that this is a public interest lawsuit, and that laches will not bar such a suit.

With respect to appellant's first argument we note that while there is some authority to the contrary, the majority of courts that have faced the issue hold that the doctrine of laches is applicable to an action in mandamus. *See, e.g., Conti v. Board of Civil Serv. Comm'rs*, 1 Cal. 3d 351, 461 P.2d 617, 82 Cal. Rptr. 337 (1969); *State ex rel. Haft v. Adams*, 238 So. 2d 843 (Fla. 1970); *Jones v. Gill*, 50 Haw. 618, 446 P.2d 558 (1968); *State ex rel. Peoples Nat'l Bank & Trust Co. v. Circuit Court*, 250 Ind. 38, 234 N.E.2d 859 (1968); *State ex rel. Frizzell v. Paulsen*, 204 Kan. 857, 465 P.2d 982 (1970); *Ipes v. Board of Fire Comm'rs*, 224 Md. 180, 167 A.2d 337 (1960); *State ex rel. Waller Chems., Inc. v. McNutt*, 152 W. Va. 186, 160 S.E.2d 170 (1968). And on at least one occasion, this court has affirmatively applied the doctrine of laches to an action in mandamus. *State ex rel. Brown v. Superior Court*, 15 Wash. 314, 46 P. 232 (1896). There it was held that a delay of 4 months, standing alone, constituted laches. The applicability of laches to an action in mandamus seems reasonable in view of the extraordinary nature of the writ. *State ex rel. Dudley v. Daggett*, 28 Wash. 1, 68 P. 340 (1902). Therefore, we hold that laches is applicable to an action in mandamus.

■ Appellant next argues that this case is in the public interest and, like environmental cases, it should not be subject to the doctrine of laches. In *State ex rel. Mason v. Board of County Comm'rs*, 146 Wash. 449, 263 P. 735 (1928), we held that plaintiff was not barred by laches because the case was one of "public concern and public right." There plaintiff brought a mandamus action seeking to invalidate a redistricting of each county commissioner's district. There was no showing that defendants were damaged either by acquiescence or change of condition.

Generally, laches depends upon the particular facts and circumstances of each case. *Schrock v. Gillingham*, 36 Wn.2d 419, 219 P.2d 92 (1950); *McKnight v. Basilides*, 19 Wn.2d 391, 143 P.2d 307 (1943). Courts in other jurisdictions regard the nature of the case to be one factor to consider when determining whether laches should be applied. Other factors include the circumstances, if any, justifying the delay, the relief demanded, and the question of whether the rights of defendant or other persons, such as the public, will be prejudiced by the maintenance of the suit. *State ex rel. Burton v. Princeton*, 235 Ind. 467, 471, 134 N.E.2d 692 (1956); *State ex rel. Waller Chems., Inc. v. McNutt, supra* at 193. In *Leschi Improvement Council v. State Highway Comm'n*, 84 Wn.2d 271, 525 P.2d 774 (1974), this court's plurality opinion noted that laches can sometimes be a bar even in a public interest lawsuit. The opinion goes on to point out that the application of laches is on a case–by–case basis, and in each case the public interest should be balanced against the harm caused by the delay in bringing the suit. We think this balancing approach is more logical. Therefore, we overrule our earlier statement in *State ex rel. Mason v. Board of County Comm'rs, supra,* on this point. The nature of the lawsuit, here a public interest lawsuit, is simply another factor to be considered by the court in determining whether the doctrine of laches should be applied.

In *Buell v. Bremerton*, 80 Wn.2d 518, 522, 495 P.2d 1358 (1972), we set forth the general elements of laches.

> The elements of laches are: (1) knowledge or reasonable opportunity to discover on the part of a potential plaintiff that he has a cause of action against a defendant; (2) an unreasonable delay by the plaintiff in commencing that cause of action; (3) damage to defendant resulting from the unreasonable delay. None of these elements alone raises the defense of laches. Laches is an implied waiver arising from knowledge of existing conditions and acquiescence in them.

Damage to defendant can arise either from acquiescence in the act about which plaintiff complains or from a change of

conditions. *See Arnold v. Melani,* 75 Wn.2d 143, 449 P.2d 800 (1968); *Edison Oyster Co. v. Pioneer Oyster Co.,* 22 Wn.2d 616, 157 P.2d 302 (1945); *Conti v. Board of Civil Serv. Comm'rs, supra.* In the present case, we believe respondents have affirmatively shown that laches should be applied against appellant.

First, we note that appellant is challenging the validity of the entire bond issue. But the original resolution, No. 77–48, calling for approval of the bonds by the electorate was passed on December 13, 1977. Mr. Lopp does not contest the validity of this resolution. The only action taken by the Board at the January 18 meeting was to amend this original resolution by changing the ballot title so that the district would have greater flexibility in spending the requested funding. The change to the ballot title was all that was done at the meeting in question.

Second, we believe that if appellant was seriously opposed to the bond plan, he would have attended the special meeting of January 16, 1978. Notice for that meeting was completely valid. Had appellant been present, he would have been aware that the Board planned to meet again on January 18. We realize appellant contends that oral notice at the January 16 meeting should not be considered a substitute for the written notice requirements of RCW 42.30. But our point is that appellant's nonattendance demonstrates his lack of concern for the public interest aspects of this suit, and his insincerity in prosecuting alleged violations of RCW 42.30.

Third, appellant had knowledge or a reasonable opportunity to discover that he had a cause of action. Appellant knew or should have known about the original resolution calling for the special election back in December 1977. And appellant was alerted to the change in ballot title as early as January 18, 1978, and no later than February 7, 1978. Appellant admitted he read an article in the January 18 edition of the *Peninsula Gateway* that summarized the

substance of the January 18 special meeting. And appellant voted in the special election held on February 7, 1978, where he would have observed the change in the ballot title which was clearly indicated.

Fourth, appellant's delay of 1 month after the special election constitutes an unreasonable delay. Despite the facts mentioned in the preceding paragraph, appellant waited until March 7, 1978, to file this present suit. We do not criticize appellant for not filing his action before the special election. The voters may have disapproved the bond issue thereby eliminating the necessity for a lawsuit. But we conclude from the record before us that appellant did nothing until he filed this suit. Except for the unsubstantiated allegation contained in appellant's complaint that a Thelma I. Coonan sent letters to the auditor and prosecuting attorney for Pierce County reporting the alleged irregularities in the January 18 meeting, there are no facts before us that would lead us to conclude that appellant attempted to exercise his rights or that he at least tried to notify defendants of a possible lawsuit. Furthermore, appellant has not given us any other explanation for his delay.

Finally, there has been a change in conditions so that if this lawsuit is allowed the school district will be damaged. As we stated earlier the district has received what it considers a favorable bid on its bonds. If the district is unable to accept this bid it will have to begin the entire bond offering procedure again. In addition the district will lose 3 months of interest income, and construction plans will be delayed. Of course, these changed conditions affect both the district's planning and the population the district was created to serve. The delay in construction, for example, will only further exacerbate the already congested condition of classroom facilities. The bond issue is designed to alleviate this problem. We think that appellant's suit has more

potential for harm to the public interest than good. Therefore, we hold that appellant's suit is barred by laches.

ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

Reconsideration denied June 29, 1978.