**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| ARTHUR WEST,<br><br>                Appellant,<br><br>        v.<br><br>WALLA WALLA CITY COUNCIL,<br>TOM SCRIBNER, STEVE MOSS,<br>BRIAN CASEY, RICK ESKIL, TED<br>KOEHLER, SUSAN NAKONIECZNY,<br>and GUSTAVO REYNA,<br><br>                Respondents. | No. 87208-7-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

MANN, J. — Arthur West sued the Walla Walla City Council and its individual members (collectively Council) for declaratory judgment, injunctive relief, and civil penalties, for violating the Open Public Meetings Act (OPMA), ch. 43.20 RCW. West contends that the Council took action during a closed executive session of a specially noticed public meeting contrary to the action identified in the special meeting notice. West appeals the trial court's decision dismissing his claims on summary judgment.

We affirm the trial court's order dismissing West's claim for injunctive relief as moot. We reverse the trial court's order dismissing West's claim for declaratory judgment as moot and his claim for penalties as barred by laches. We remand to the trial court to grant West's motion for partial summary judgment and declare the

Council's November 18, 2022 actions violated the OPMA and award West his costs. We remand for further proceedings to determine whether the Council acted knowingly, and if so, to award penalties and costs under RCW 43.20.120(1).

Affirmed in part, reversed in part, and remanded.

I

On November 16, 2022, the City of Walla Walla gave public notice that the Council would hold a special meeting on November 18, 2022, to conduct an executive session to "[t]o evaluate the qualifications of an applicant for public employment or to review the performance of a public employee pursuant to RCW 42.30.110(1)(g)" followed by an open session to "[v]ote to select 5 finalists for the position of City Manager."

On November 18, when the Council members emerged from executive session, Mayor Tom Scribner made the following public announcement:

> The council is unanimously of the opinion that of the eight semifinalists, that one of them . . . is, from our perspective for a variety of reasons, superior to the other applicants, and that we believe that if we continue with the applicant interview process the result would not change, and that we would still be wanting to hire [that candidate] . . . as our City manager.
>
> We have, therefore, decided to postpone any further interview process and to notify [that candidate] of our decision to begin negotiations . . . regarding the terms and conditions of that candidate's employment.

The Council members then unanimously approved a motion to "move forward with negotiations and offer of employment" for the agreed-upon candidate.

On November 27, 2022, the Walla Walla Union Bulletin published a letter to the editor from community resident Barbara Clark asserting that "[t]he council action

appears to have violated the [OPMA] by changing the announced purpose of the special meeting and by making their actual decisions in a secret meeting."

On December 2, 2022, the City gave public notice stating that the Council would consider "City Manager appointment and contract approval" in an open session at its upcoming December 7 meeting. During open session at that meeting, the Council members unanimously passed Mayor Scribner's motion to "reconsider the action taken on November 18th, with respect to the selection of a City Manager." The Council members then discussed whether to offer the city manager job to preferred candidate Elizabeth Chamberlain or to continue with the selection process. During this discussion, Council member Rick Eskil agreed that Chamberlain was the strongest candidate but voiced concerns about the selection process:

> [I]n hindsight, I believe it was a mistake to not have let the entire process play out. I concede to having made an error in judgment in not being more vocal about selecting a group of five finalists and then having public interviews.
>     . . . .
> In addition, and perhaps more importantly, I personally believe the council violated the Open Public Meetings Act, albeit unintentionally.
>     . . . .
> In my view, the Mayor's words corroborate that we violated the Open Public Meetings Act when he said "unanimously of the opinion" and that "we decided." What should have happened is we should have come out of executive session and, in public, had a discussion about why the hiring process should be halted and why we should focus on negotiations with [Chamberlain]. We should have explained in public the various reasons we did what we did, and I hope we are doing that now.

At the conclusion of the discussion, the Council members unanimously passed motions to terminate the selection process and to hire Chamberlain as city manager. On December 21, 2022, after taking additional public input, the Council approved the

3

employment agreement and the parties executed a contract to hire Chamberlain as city manager.

On January 13, 2023, the Council received a letter from Barbara Clark and Sherilyn Jacobson indicating that they would sue unless the Council adopted a resolution apologizing for violating the OPMA and taking additional remedial action. At a meeting on February 22, 2023, the Council discussed a proposal to direct staff to formulate an OPMA training plan for Council members. Clark appeared at the meeting and stated that the proposal was a "good step," but "if there are people who think they did not violate the [OPMA] and therefore are unwilling to state that they violated it and intend not to do it anymore," then "a judge has to instruct this council on what the [OPMA] means." The Council considered the matter and passed a motion directing staff to develop an OPMA training plan for Council members. The motion did not address whether an OPMA violation had occurred.

On February 24, 2023, West sued the Council alleging that they violated the OPMA on November 18, 2022, by "knowingly conducting [an] unlawful meeting[] and by improperly deliberating and taking action or final action in secret."[1] West sought declaratory and injunctive relief, civil penalties, and costs. The Council moved to dismiss, which the trial court treated as a motion for summary judgment. West moved for partial summary judgment seeking a declaration that the Council violated the OPMA on November 18, 2022 by taking final action at a special meeting on a matter not specified in the notice, contrary to RCW 42.30.080(3).

---

[1] The complaint also alleged that the Council violated the OPMA at a meeting on June 23, 2021. Because West does not discuss this claim on appeal, it is abandoned. See GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 126, 134, 317 P.3d 1074 (2014) (in reviewing a grant of summary judgment, any matters argued below but not raised on appeal are deemed abandoned).

The trial court granted summary judgment to the Council, denied West's motion for partial summary judgment, and awarded the Council their costs. The court ruled that West's complaint was barred by laches and that his claims for declaratory and injunctive relief were moot. The court further ruled that "the Walla Walla City Council did not violate RCW 42.30.080(3) on November 18, 2022" and that the Council members "cannot be penalized for any action taken at that meeting" because it was "lawfully convened."

West appealed.

II

West argues that the trial court erred in dismissing his complaint on summary judgment and denying his motion for partial summary judgment.[2] He contends that his claims are not barred by laches or mootness. He further contends that the undisputed facts establish that the Council violated the OPMA on November 18, 2022 and that the case should be remanded for further proceedings.

A

We review a summary judgment ruling de novo. Martin v. Gonzaga Univ., 191 Wn.2d 712, 722, 425 P.3d 837 (2018). Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). "On cross motions for summary judgment, we view the evidence in

---

[2] West objects to the trial court's entry of findings of fact and conclusions of law in its summary judgment order. Because we review orders on summary judgment de novo, "[f]indings of fact and conclusions of law are not necessary on summary judgment and, if made, are superfluous.' " Nelson v. Dep't of Lab. & Indus., 198 Wn. App. 101, 109, 392 P.3d 1138 (2017) (quoting Concerned Coupeville Citizens v. Town of Coupeville, 62 Wn. App. 408, 413, 814 P.2d 243 (1991). Accordingly, we disregard them.

the light most favorable to the nonmoving party with respect to the particular claim." West v. Wash. Dep't of Fish & Wildlife, 21 Wn. App. 2d 435, 441, 506 P.3d 722 (2022).

The OPMA is "Washington's comprehensive transparency statute." Columbia Riverkeeper v. Port of Vancouver USA, 188 Wn.2d 421, 434, 395 P.3d 1031 (2017). "OPMA contains a strongly worded statement of purpose: 'The legislature finds and declares that all public commissions, boards, councils, committees, subcommittees, departments, divisions, offices, and all other public agencies of this state and subdivisions thereof exist to aid in the conduct of the people's business. It is the intent of this chapter that their actions be taken openly and that their deliberations be conducted openly.' " Citizens All. for Prop. Rights Legal Fund v. San Juan County, 181 Wn. App. 538, 543-44, 326 P.3d 730 (2014) (quoting RCW 42.30.010). To achieve this goal, "[a]ll meetings of the governing body of a public agency shall be open and public and all persons shall be permitted to attend any meeting of the governing body of a public agency." RCW 42.30.030. We must construe OPMA liberally to ensure that its purpose is accomplished. Eugster v. City of Spokane, 110 Wn. App. 212, 222, 39 P.3d 380 (2002); RCW 42.30.910 ("The purposes of this chapter are hereby declared remedial and shall be liberally construed.").

## B

We first consider whether the trial court erred in dismissing West's claims based on their asserted defense of laches. Whether an equitable doctrine, such as laches, applies is a question of law we review de novo. Tupper v. Tupper, 15 Wn. App. 2d 796, 810, 478 P.3d 1132 (2020); In re Marriage of Shoemaker, 128 Wn.2d 116, 120-21, 904 P.2d 1150 (1995).

"Laches is an implied waiver arising from knowledge of existing conditions and acquiescence in them." Lopp v. Peninsula Sch. Dist. No. 401, 90 Wn.2d 754, 759, 585 P.2d 801 (1978). Because laches is an "extraordinary defense," it should be applied "only when a party, knowing his rights, takes no steps to enforce them and the condition of the other party has in good faith become so changed that the party cannot be restored to his or her former state." Global Neigh. v. Respect Wash., 7 Wn. App. 2d 354, 383, 434 P.3d 1024 (2019).

The party asserting laches bears the burden of proof. Tupper, 15 Wn. App. 2d at 811. To successfully rely on a laches defense, a party must establish "(1) knowledge or reasonable opportunity to discover on the part of a potential plaintiff that he has a cause of action against a defendant, (2) an unreasonable delay by the plaintiff in commencing that cause of action; (3) damage to defendant resulting from the unreasonable delay." Lopp, 90 Wn.2d at 759 (quoting Buell v. Bremerton, 80 Wn.2d 518, 522, 495 P.2d 1358 (1972)). "[T]he main component of the doctrine is not so much the period of delay in bringing the action, but the resulting prejudice and damage to others." Clark County Pub. Util. Dist. No. 1 v. Wilkinson, 139 Wn.2d 840, 849, 991 P.2d 1161 (2000).

The Council argues that laches applies because West should have known he had a cause of action, yet unreasonably delayed filing suit until after Chamberlain was hired and had already spent months working as the city manager. But "[a]bsent highly unusual circumstances, we will not apply the doctrine of laches to bar an action short of the applicable statute of limitations." Carrillo v. City of Ocean Shores, 122 Wn. App. 592, 610, 94 P.3d 961 (2004). Here, West filed suit about two months after Chamberlain was hired—well within the default two-year statute of limitations for OPMA

7

claims set forth in RCW 4.16.130. We are not persuaded that the brief delay was "highly unusual." To the contrary, the record shows that West filed his lawsuit two days after Clark informed the Council that she would pursue legal action unless they admitted to violating the OPMA.

The Council also have not met their burden to show damages resulting from the two-month delay. Damages can arise from acquiescence in the act or when an unreasonable delay leads to a change of conditions which would make it inequitable to enforce the claim. Lopp, 90 Wn.2d at 759-60; Voris v. Wash. State Human Rights Comm'n, 41 Wn. App. 283, 288, 704 P.2d 632 (1985). While West could have sought to nullify the Council's action hiring the city manager, see RCW 42.30.060(1) (nullification of action as a remedy for an OPMA violation), he did not. Thus it does not matter that the city manager was already on the job for two months before West filed his lawsuit. The brief delay in filing would does not increase any penalties or costs arising from the OPMA violation. And we disagree that the Council's subsequent "corrective actions" resulted in a change of conditions that would justify applying the doctrine of laches to bar West's lawsuit on equitable grounds.

The Council's reliance on Lopp is misplaced. In Lopp, our Supreme Court held that an OPMA action was barred by laches where the plaintiff delayed filing suit for one month in challenging a special election for issuance of bonds. 90 Wn.2d at 761. The court emphasized that the delay was unreasonable given that the school district and the public it serves would suffer significant damage if forced to redo the entire bond offering procedure. Lopp, 90 Wn.2d at 761-62. Such concerns are not present here.

We conclude that the trial court erred in dismissing West's complaint based on the doctrine of laches.

C

West argues that the trial court erred in dismissing his claims for declaratory and injunctive relief as moot. We agree with the trial court that West's claim for injunctive relief is moot. We agree with West, however, that his claim for declaratory judgment that the Council's violated the OPMA, is not moot.

A controversy is moot where " 'it involves only abstract propositions or questions, the substantial questions in the trial court no longer exist, or a court can no longer provide effective relief.' " Wash. State Commc'n Access Project v. Regal Cinemas, Inc., 173 Wn. App. 174, 204, 293 P.3d 413 (2013) (quoting Spokane Research & Defense Fund v. City of Spokane, 155 Wn.2d 89, 99, 117 P.3d 1117 (2005)). "Mootness, like other questions of justiciability, is a question of law reviewed de novo." Regal Cinemas, 173 Wn. App. at 204.

1

The standard for injunctive relief in OPMA cases is set forth in Protect the Peninsula's Future v. Clallam County, 66 Wn. App. 671, 677, 833 P.2d 406 (1992):

> [O]ne who seeks relief by temporary or permanent injunction must show (1) that [they have] a clear legal or equitable right, (2) that [they have] a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to [them].

"All three criteria must be met before injunctive relief is warranted." Protect the Peninsula's Future, 66 Wn. App. at 677.

Assuming that the Council's November 18, 2022 action violated the OPMA, West cannot show a well-grounded fear that the Council will do so again. The Council reconsidered its action on December 7, 2022, and took steps to address the OPMA concerns. West also cannot claim that the city manager hiring process resulted in or will result in substantial injury to him. West conceded before the trial court that he did not seek to remove the city manager and that she was properly hired during the December 2022 meetings. "The well-established rule is that where a governing body takes an otherwise proper action later invalidated for procedural reasons only, that body may retrace its steps and remedy the defects by re-enactment with the proper formalities." Henry v. Town of Oakville, 30 Wn. App. 240, 246, 633 P.2d 892 (1981).

West argues that the Council is likely to continue violating the OPMA unless the court grants his request for injunctive relief. "Voluntary cessation does not moot a case or controversy unless 'subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' " Regal Cinemas, 173 Wn. App. at 204 (quoting Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1, 551 U.S. 701, 719, 127 S. Ct. 2738, 168 L. Ed. 2d 508 (2007)). But again, the record shows that the Council considered the public's OPMA concerns and directed staff to formulate an OPMA training plan for all current and future Council members. West has not established that the alleged problems are reasonably expected to recur. The trial court did not err in dismissing West's claims for injunctive relief as moot.

2

Under the Uniform Declaratory Judgments Act (UDJA), ch. 7.24 RCW, courts have broad powers to "settle and afford relief from insecurity and uncertainty with

respect to rights, status, and other legal relations." Stevens County v. Stevens County Sheriff's Dep't, 20 Wn. App. 2d 34, 40, 499 P.3d 917 (2021).  The UDJA is to be liberally construed and administered.  Clallam County Deputy Sheriff's Guild v. Bd. of Clallam County Comm'rs, 92 Wn.2d 844, 848, 601 P.2d 643 (1979); RCW 7.24.120.  Where an appellant seeks reversal of the trial court's legal conclusions, we review the decision denying declaratory relief de novo.  To-Ro Trade Shows v. Collins, 144 Wn.2d 403, 410, 27 P.3d 1149 (2001).

"Absent issues of major public importance, a 'justiciable controversy' must exist before a court's jurisdiction may be invoked under the [UDJA]."  Clallam County, 92 Wn.2d at 848.  A "justiciable controversy" is

> (1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.

Clallam County, 92 Wn.2d at 848 (citations omitted).

The Council argues that there is no longer an actual, present, or existing dispute, because it corrected any alleged OPMA violation in its subsequent December actions. We disagree.  West's complaint seeks a declaration that the Council violated the OPMA on November 18, 2022, as well as civil penalties and costs.  The Council denied that claim in its answer and, on summary judgment, the trial court agreed, holding that "the Walla Walla City Council did not violate RCW 42.30.080(3) on November 18, 2022." Until those issues are resolved, a dispute is direct and substantial, rather than potential, theoretical, abstract, or academic.

The trial court erred in concluding that West's action for declaratory judgment was moot.[3]

D

West argues that the trial court erred in both denying his motion for partial summary judgment that the Council violated the OPMA at their November 18, 2022 special meeting, and in granting summary judgment dismissing his claim for penalties and costs. Because the Council violated the OPMA at its November 18, 2022 special meeting, we agree with West that partial summary judgment was appropriate. But because there remains a dispute of material fact over whether the violation was done knowingly, further proceedings are required to determine whether penalties are appropriate.

Under RCW 42.30.120(1), "[e]ach member of the governing body who attends a meeting of such governing body where action is taken in violation of any provision of this chapter applicable to him or her, with knowledge of the fact that the meeting is in violation thereof, shall be subject to personal liability in the form of a civil penalty." To prevail on a claim for civil penalties under RCW 42.30.120(1), West must produce sufficient evidence showing "(1) that a member of a governing body (2) attended a meeting of that body (3) where action was taken in violation of OPMA and (4) the member had knowledge that the meeting violated OPMA." Citizens All., 181 Wn. App. at 543-44 (citing Wood v. Battle Ground Sch. Dist., 107 Wn. App. 550, 558, 27 P.3d 1208 (2001)).

_____

[3] Moreover, even if West's claim for declaratory judgment was moot, it would not affect West's claims for civil penalties and costs. See Kuehn v. Renton Sch. Dist. No. 403, 103 Wn.2d 594, 597, 694 P.2d 1078 (1985) (controversy not moot, even though declaratory relief was no longer possible, where statute provided for nominal damages and attorney fees).

In order to prevail on an award of costs for "prevail[ing] against a public agency" under RCW 42.30.120(4), West need only meet the first three elements. See Eugster, 110 Wn. App. at 226 ("while the knowledge element is required to impose the civil penalty, it is not a necessary element for recovering attorney fees"); Citizens All., 181 Wn. App. at 544 n.6 (explaining that "it is not appropriate to graft a knowledge requirement onto the test for overcoming summary judgment where civil penalties are not at issue").

There is no dispute over the first two elements—(1) that members of the Council, (2) attended a meeting of the Council. We turn then to the third element—whether action was taken in violation of the OPMA. The Council contends that the statutory language of RCW 42.30.120(1) expressly disallows civil penalties unless the member attended an illegally convened meeting. They maintain that the November 18 meeting was legally convened because the City properly gave public notice on November 16 that the Council would hold a special meeting and executive session on that date, in compliance with RCW 42.30.080(2). Thus, they contend that penalties are not appropriate because the meeting was proper, even if the action taken was not. We disagree.

The Council's argument relies primarily on a single paragraph in Zink v. City of Mesa, 17 Wn. App. 2d 701, 487 P.3d 902 (2021). In Zink, the plaintiff brought an OPMA claim alleging that the City of Mesa violated the OPMA by preventing her from video recording a public meeting. She asserted that civil penalties were warranted because the mayor and members of the city council likely knew their actions violated the OPMA. Zink, 17 Wn. App. 2d at 712. The trial court ruled that there was no

knowledge because the defendants had not received any OPMA training. Zink, 17 Wn. App. 2d at 712. The appellate court began its analysis as follows:

> To state a claim against the individual officials, Ms. Zink also had to prove each member had "knowledge of the fact that the meeting is in violation of the OPMA." . . . Notably, this mens rea element is phrased so that the member must have knowledge the meeting itself was in violation of the OPMA, not knowledge that a particular action was in violation of the OPMA.

Zink, 17 Wn. App. 2d at 711-12. The court then held that Zink failed to establish a basis for individual liability under the OPMA because "there is simply no evidence of knowledge one way or the other." Zink, 17 Wn. App. 2d at 712. The opinion, however, did not discuss what the members may have known as to whether the "meeting itself" violated OPMA, so the sentence the defendants rely on is nonbinding dicta at best.[4]

The Council's argument, that their actions violate the OPMA only if taken an at improper meeting, conflicts with our mandate to construe the OPMA liberally in favor of government transparency. "In construing statutes, we seek to effectuate the legislative intent, which we discern 'from the statutory text as a whole, interpreted in terms of the general object and purpose of the legislation.'" Wood, 107 Wn. App. at 558 (quoting Grp. Health Co-op. of Puget Sound, Inc. v. Dep't of Revenue, 106 Wn.2d 391, 401, 722 P.2d 787 (1986)). We "construe a statute 'so that all the language used is given effect, with no portion rendered meaningless or superfluous.'" Seattle City Light v. Swanson, 193 Wn. App. 795, 810, 373 P.3d 342 (2016) (quoting Rapid Settlements, Ltd., v. Symetra Life Ins. Co. 134 Wn. App. 329, 332, 139 P.3d 411 (2006)). Additionally, "[c]ommon sense informs our analysis, as we avoid absurd results in statutory

---

[4] See ADCI Corp. v. Nguyen, 16 Wn. App. 2d 77, 86, 479 P.3d 1175 (2021) (dicta is "language not necessary to the decision in a particular case").

interpretation." Linville v. Dep't of Ret. Sys., 11 Wn. App. 2d 316, 321, 452 P.3d 1269 (2019) (quoting State v. Alvarado, 164 Wn.2d 556, 562, 192 P.3d 345 (2008)).

A "meeting" is subject to the OPMA when a majority of the governing body meets and takes "action." Citizens All. For Prop. Rights Legal Fund v. San Juan County, 184 Wn.2d 428, 442-43, 359 P.3d 753 (2015) (quoting RCW 42.30.020(4)). "Action" under the OPMA is defined as "the transaction of the official business of a public agency by a governing body including but not limited to receipt of public testimony, deliberations, discussions, considerations, reviews, evaluations, and final actions." RCW 42.30.020(3). The Council's interpretation of RCW 42.30.120(1) treats "meeting" and "action" as if they occur in isolation. But without "action," no "meeting" occurs for OPMA purposes.

Moreover, the notice of any special meeting must "specify . . . the business to be transacted" at the meeting. RCW 42.30.080(3). RCW 42.30.020(3) "does not authorize action to be taken in executive session." Miller v. City of Tacoma, 138 Wn.2d 318, 327, 979 P.2d 429 (1999). The Council's interpretation would render RCW 42.30.080(3) superfluous, as it would allow the governing body to disregard the business specified in the notice and take whatever actions it wished without concern for civil penalties so long as the meeting was properly noticed.

The Council's reliance on Eugster is also misplaced. In Eugster, the defendants argued that no evidence of a "meeting" exists because the gathering in question did not constitute a majority of the governing body. 110 Wn. App. at 223. The court remanded to determine whether an illegal meeting had occurred that would support imposition of penalties and stated that "if at fact finding no improper meeting is found, Mr. Eugster is

15

not entitled to attorney fees or a civil penalty under the OPMA." Eugster, 110 Wn. App. at 229. Here, in contrast to Eugster, the parties do not dispute that a "meeting" occurred on November 18. Rather, the Council asserts that Council members cannot be penalized for allegedly improper actions taken at a lawfully called meeting. We reject the Council's assertion that West's demand for penalties did not state a legally sufficient claim.

Because the challenged events took place during executive session at a special meeting, two OPMA provisions are particularly relevant here. The OPMA requires that all "meetings" must be open to the public unless an exemption applies. Miller, 138 Wn.2d at 324-25 (citing RCW 42.30.030). One of these exceptions, the "executive session rule," allows a governing body to "evaluate the qualifications of an applicant for public employment" in executive session. RCW 42.30.110(1)(g). But when the governing body "elects to take final action hiring . . . that action shall be taken in a meeting open to the public." Miller, 138 Wn.2d at 326. And regarding notice for a special meeting, RCW 42.30.080(3) provides that: "[t]he call and notices required under subsections (1) and (2) of this section shall specify the time and place of the special meeting and the business to be transacted. Final disposition shall not be taken on any other matter at such meetings by the governing body."

West alleges that the Council violated RCW 42.30.110(1)(g) by conducting balloting and coming to a "final hiring action" in secret during the November 18 executive session. He further argues that the Council violated RCW 42.30.080(3) because the action constituted a "final disposition" that was not specified as part of the

16

"business to be transacted" in the November 16 notice. West likens his case to Miller and In re Recall of Bird, 1 Wn.3d 419, 422, 527 P.3d 1141 (2023).

In Miller, the Tacoma City Council held an executive session during which members voted in secret ballots to select a candidate for the planning commission. 138 Wn.2d at 320-22. The city argued that RCW 42.30.110(1)(g) permitted the council to evaluate the applicants' qualifications and take ballots to arrive at a consensus candidate. Our Supreme Court held that the executive session balloting constituted a "final action" because the Council had made a collective decision by an actual vote on a proposal. Miller, 138 Wn.2d at 331. And in Bird, several members of the Richland School District Board voted at a special meeting to remove the mask mandate in public schools. 1 Wn.3d at 429. Because the notice for the special meeting did not provide notice that a motion for mask choice was on the agenda, "final disposition" of the matter violated OPMA. Bird, 1 Wn.3d at 429.

The Council points out that RCW 42.30.080(3) does not limit topics that may be considered during a special meeting to those on the agenda, provided that "final disposition" does not occur. See WASH. OFF. OF ATT'Y GEN., WASHINGTON STATE SUNSHINE LAWS 2016: AN OPEN GOVERNMENT RESOURCE MANUAL 59 (2016) (stating that "the statutory language suggests that the governing body could discuss, but not finally dispose of, matters not included in the notice of the special meeting.").[5] They point out that "final action" is defined by RCW 42.30.020(3) as "a collective positive or negative decision, or an actual vote by a majority of the members of a governing body when

---

[5] https://agportal-s3bucket.s3.amazonaws.com/uploadedfiles/Home/About_the_Office/ Open_Government/Open_Government_Internet_Manual/Open%20Government%20Resource %20Manual%202016%20-%20Oct.%2031%202016%20%282%29.pdf.

17

sitting as a body or entity, upon a motion, proposal, resolution, order, or ordinance," so "final disposition," which is not defined in OPMA, must mean something more. They note that "final disposition" is defined by the dictionary as "[s]uch a conclusive determination of the subject-matter that after the . . . decision is made nothing further remains to fix the rights and obligations of the parties." BLACK'S LAW DICTIONARY 630 (6th ed. 1990). Accordingly, they assert that they did not take "final disposition" at the November 18 meeting; they merely agreed to postpone the interview process and to enter into negotiations with their preferred candidate. They also contend that Miller and Bird are distinguishable because there, unlike here, the actions were sufficiently "final" to constitute an OPMA violation. We disagree with the Council.

Here, the notice for the November 18 meeting stated that the Council would conduct an executive session to "[t]o evaluate the qualifications of an applicant for public employment or to review the performance of a public employee pursuant to RCW 42.30.110(1)(g)" followed by an open session to "[v]ote to select 5 finalists for the position of City Manager." The Council did not conduct such a vote in open session. Instead, its members emerged from executive session and announced that they had "decided to postpone any further interview process" and "move forward with negotiations and offer of employment" for the agreed-upon candidate. This action violated the OPMA. As a result, the trial court erred in denying West's motion for partial summary judgment.

Finally, we turn to the fourth element—whether Council members had "knowledge" that the action violated the OPMA. Based on the statements made by Councilmember Rick Eskil at the November 18, 2022, meeting, it appears that there is

18

a genuine issue of material fact as to whether the Council acted knowingly.  Remand is necessary to determine whether the Council members knew, and therefore a civil penalty is appropriate under RCW 42.30.120(1).

III

We affirm the trial court's order dismissing West's claim for injunctive relief as moot.  We reverse the trial court's order dismissing West's claim for declaratory judgment as moot and his claim for penalties as barred by laches.  We remand to the trial court to grant West's motion for partial summary judgment and declare the Council's November 18, 2022 actions violated the OPMA and award West his costs.  We remand for further proceedings to determine whether the Council acted knowingly, and if so, to award penalties and costs under RCW 43.20.120(1).

Affirmed in part, reversed in part, and remanded.

_____
Mann, J.

WE CONCUR:

_____          _____
Feldman, J.                                                      Díaz, J.