IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DONNA ZINK and JEFF ZINK, wife and husband, and the marital community composed thereof, | ) ) ) ) | No. 36994-3-III |
| Appellants / Cross Respondents, | ) ) | |
| v. | ) ) | |
| CITY OF MESA, a Washington Municipal Corporation; DUANA RAE ROSS, a married woman; DAVID FERGUSON, a married man; and ELIZABETH DAVIS, a married woman, | ) ) ) ) ) ) | OPINION PUBLISHED IN PART |
| Respondents / Cross Appellants, | ) ) | |
| PATRICK FAY, a married man; FRANKLIN COUNTY, a Washington Municipal Corporation; RICHARD LATHIM, in his capacity as Franklin County Sheriff; RUBEN BAYONA, an individual; FRANKLIN COUNTY SHERIFF'S DEPUTY SCANTLIN, an individual; and BRIAN PFEIFFER, an individual, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

PENNELL, C.J. — The Open Public Meetings Act of 1971 (OPMA), chapter 42.30

RCW, is a powerfully worded statute that broadly protects the public's right of access to

all forms of public meetings. Under the terms of the statute, governmental bodies cannot

set conditions on the right to attend a public meeting unless reasonably based on the need to keep order.

Donna Zink was excluded from a Mesa city council meeting because she sought to video record the proceedings. The video recording was not inherently disruptive; Ms. Zink was prohibited from making a recording simply because at least some members of the city council did not wish to be on video. By conditioning Ms. Zink's attendance at the city council meeting on her agreement not to make a video recording, Mesa violated Ms. Zink's rights under the OPMA. We affirm the trial court's order granting Ms. Zink's OPMA claim against Mesa, but reverse the court's award of attorney fees, as it was too restrictive.[1]

## FACTS

Mesa is a noncharter code city, with a mayor and city council organized under chapter 35A.12 RCW. As a noncharter code city, the city council is the governing body of Mesa. Former RCW 35A.12.010 (1997). The mayor serves as presiding officer for the city council, having a vote only in case of a tie concerning certain matters.

---

[1] In the published portion of this opinion we address Ms. Zink's claims under the OPMA. We address her remaining claims in the unpublished portion of our opinion and grant partial relief based on the trial court's summary disposition of various claims against the Zinks.

Former RCW 35A.12.100 (1979). In 2003, the Mesa city council consisted of five members. The mayor was Duana Ross.

The Mesa city council had a meeting scheduled to commence at 7:00 p.m. on May 8, 2003. There were routine items on the agenda. Three of the council's five members were present for that day's meeting, constituting a majority of the governing body.

Local resident Donna Zink appeared for the May 8 city council meeting and began video recording a few minutes before 7:00 p.m., utilizing a mini-recorder and tripod. Ms. Zink had previously recorded other city council meetings. She had also notified the city attorney of her intent to video record the council meetings and had not received any objections.

Shortly after Ms. Zink began recording, council member Patrick Fay and Mayor Duana Ross told Ms. Zink they did not care to be on tape. Two other members of the council were present, but remained silent. The mayor told Ms. Zink she needed permission to tape the proceedings. Ms. Zink asked what law required such permission. Ms. Zink stated she was "not turning the camera off so call the police." Ex. 51 at 34 sec. through 37 sec.

Mayor Ross then called 911 at the prompting of council member Fay. During the call, Mayor Ross stated "we have some problems here with a citizen" and "we would like her to be removed from city hall." Ex. 16 at 14 sec. through 27 sec. After getting off the telephone with 911, Mayor Ross called the council meeting to order and then immediately announced a 10 minute recess.

A sheriff's deputy arrived and talked to Ms. Zink. Ms. Zink informed the officer she had a right to record the meeting as it was a public meeting and she was not causing a disturbance. A discussion ensued over whether Washington's privacy act, chapter 9.73 RCW, applied to Ms. Zink's recording, or whether the OPMA applied. While apparently reviewing the OPMA, Mayor Ross commented she had three council members objecting to the video tape because it made them feel uncomfortable while they were trying to do their jobs. Mayor Ross also stated she had tried to consult with the city attorney about the issue, but had not yet heard back.

The deputy eventually said he had conferred with council member Fay, who also worked as a sheriff's deputy. According to the deputy, council member Fay reported learning from a prosecutor that a recording could not be made without two-party consent. The deputy claimed Ms. Zink was trespassing and would be arrested if she did not either leave or stop recording. Ms. Zink did not stop recording. Ms. Zink was then handcuffed,

4

transported to the Franklin County jail, given a citation, and released. After Ms. Zink's

removal, the council resumed its meeting and conducted business on its agenda.

Ms. Zink was criminally charged via citation with trespass in the first degree.

She was arraigned on May 12, 2003, and was required to return to court for a pretrial

conference on June 11. Instead of returning for a pretrial conference, the docket shows

the case was dismissed through a motion of the prosecutor on May 20.

## PROCEDURE

In 2005, Ms. Zink and her husband sued the city of Mesa, Mayor Ross, the

three city council members present that night (collectively Mesa), Franklin County,

the Franklin County Sheriff's Office, the elected sheriff, and the involved deputies.

The Zinks made claims regarding violations of the OPMA as well as civil rights and

emotional distress claims regarding Ms. Zink's exclusion from the meeting and arrest.

In pretrial rulings, the court disposed of all the Zinks' claims except the OPMA

claim and a tort claim under 42 U.S.C. § 1983 for deprivation of liberty without due

process. Also prior to trial, the Zinks settled their claims against the county. Council

member Fay later died and the claims against him were voluntarily dismissed. Although

the Zinks had originally been represented by counsel, they proceeded to trial pro se.

5

A jury trial was held in January 2018. In the middle of trial, Mesa filed a motion for directed verdict on both claims. The court granted the motion with respect to the § 1983 claim. The jury subsequently returned a defense verdict on the OPMA claim.

Posttrial, the court ruled the OPMA case was not triable to a jury as a matter of right and the court was not bound by the jury's verdict. The court set aside the jury's verdict and found the city of Mesa violated the OPMA by prohibiting Ms. Zink from recording. The court refused to enter judgment against the mayor and city council members in their individual capacities, finding there was insufficient proof as to that aspect of the case.

Ms. Zink sought attorney fees and costs in the amount of $19,411.65, pursuant to the OPMA. RCW 42.30.120(4). She produced an attorney fee declaration from her prior attorney, documenting the work he had done on the case. The court disregarded most of the fee declaration. The court awarded $5,000.00 in attorney fees, based on its estimate of what would be reasonable under the circumstances. The court also awarded $1,511.49 in costs, for a total judgment against the city of $6,511.49.

The Zinks sought direct review by the Washington Supreme Court. The Supreme Court denied review and transferred the appeal to this court, pursuant to RAP 4.2(e)(1).

ANALYSIS

*Open Public Meetings Act*

The OPMA provides "[a]ll meetings of the governing body of a public agency shall be open and public and all persons shall be permitted to attend any meeting of the governing body of a public agency, except as otherwise provided in this chapter." RCW 42.30.030. Remedies for violations of the OPMA include mandamus or injunction as provided in RCW 42.30.130, voidance of certain actions as provided in RCW 42.30.060, and recoupment of "all costs" and reasonable attorney fees as provided in RCW 42.30.120(4).

Our review of the OPMA's legal requirements is de novo. *Wood v. Battle Ground Sch. Dist.*, 107 Wn. App. 550, 558, 27 P.3d 1208 (2001). Statutory terms are interpreted according to the rules for discerning legislative intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-12, 43 P.3d 4 (2002). We defer to the trial court for any applicable factual findings. *See Miller v. City of Tacoma*, 138 Wn.2d 318, 322-23, 979 P.2d 429 (1999). Here, the parties dispute whether an OPMA violation occurred in this case and, if so, whether liability extends only to the city or also to the mayor and individual city council members. These are largely legal matters and are therefore reviewed de novo.

*The May 8, 2003, proceedings constituted a "meeting"*

One of the elements[2] of an OPMA claim is proof a governing body conducted

a "meeting." *See Eugster v. City of Spokane*, 110 Wn. App. 212, 222, 39 P.3d 380

(2002). The OPMA defines a "meeting" as a gathering "at which action is taken."

RCW 42.30.020(4). Our case law has discerned the term "meeting" was intended to

have broad application. *Wood*, 107 Wn. App. at 562. The basic requirements are the

presence of a majority of the governing body and a collective intent to transact official

business. *Citizens All. for Prop. Rights Legal Fund v. San Juan County*, 184 Wn.2d 428,

442-43, 359 P.3d 753 (2015).

The May 8 session attended by Ms. Zink readily meets the foregoing definition of

a meeting. The fact that action had yet to be taken does not mean there was no meeting.

It is undisputed that at the time Ms. Zink recorded the proceedings, the mayor and city

---

[2] A claim against a governmental entity requires proof of five facts: (1) members
(2) of a governing body or a committee thereof (3) of a public agency (4) violated or
intend to violate a section of chapter 42.30 RCW, (5) at a meeting. RCW 42.30.030;
former RCW 42.30.120(1) (1985). When a claim is against an individual member for
personal liability, the plaintiff must prove a past violation, not an anticipatory violation,
under element (4), and must also prove (6) the individual member had "knowledge of the
fact that the meeting [was] in violation" of a provision of the statute. Former RCW
42.30.120(1). The current remedies for a claim against a member found personally liable
are a $500 civil penalty for a first violation and a $1,000 civil penalty for subsequent
violations. RCW 42.30.120(1)-(2).

council members had gathered together with the collective intent to hold a meeting.

This is all that is required under the OPMA.

*The OPMA includes a right to record public meetings*

The OPMA recognizes very few avenues for restricting attendance at

governmental meetings. The statute recognizes the authority to exclude the public from

executive sessions. Former RCW 42.30.110 (2001). In addition, the governing body

may remove a member of the public who is disrupting the orderly conduct of business.

RCW 42.30.050. But any such removal must be reasonable. *In re Recall of Kast*, 144

Wn.2d 807, 811-12, 31 P.3d 677 (2001) (per curiam).

One of the core protections under the OPMA is that an individual's right to

attend a public meeting cannot be restricted to fulfilment of a "condition precedent."

RCW 42.30.040. The statute does not define what is meant by "condition precedent."

*Black's Law Dictionary* defines the term as:

> An act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises. ● If the condition does not occur and is not excused, the promised performance need not be rendered. The most common condition contemplated by this phrase is the immediate or unconditional duty of performance by a promisor.

No. 36994-3-III
*Zink v. City of Mesa*

BLACK'S LAW DICTIONARY 366 (11th ed. 2019).[3]

Under the foregoing definition, extracting a promise not to record as a precondition on attendance at a public meeting would appear to qualify as a condition precedent. This understanding is also consistent with the purpose of the OPMA, which is to grant the people of the state of Washington the right to be informed and retain control over governmental agencies. RCW 42.30.010.

The foregoing understanding of the OPMA is consistent with a 1998 attorney general opinion. When asked by a county prosecutor whether "a county legislative body [may] prohibit an individual from using a video or audio recording device to record a meeting or hearing conducted by county officials," the Office of the Attorney General concluded:

> A county does not have authority to ban video or sound recording of a meeting required to be open to the public by the [OPMA]; the county could regulate recording only to the extent necessary to preserve order at the meeting and facilitate public attendance.

1998 Op. Att'y Gen. No. 15, at 1.

---

[3] The edition of *Black's Law Dictionary* current at the time of the OPMA's enactment states: "A condition precedent . . . is one which to be performed before some right dependent thereon accrues, or some act dependent thereon is performed." BLACK'S LAW DICTIONARY 366 (rev. 4th ed. 1968).

10

While we are not bound by attorney general opinions, we generally give them great weight. *Five Corners Family Farmers v. State*, 173 Wn.2d 296, 308, 268 P.3d 892 (2011). Such weight is especially appropriate here, given the opinion has been in place for over 20 years and the OPMA has been amended several times during this period with no changes that would impact the opinion.

We interpret the OPMA as prohibiting governing bodies from restricting audio or video recordings as a condition precedent to attending a public meeting. This is not to say a governing body cannot exclude a member of the public who is recording a meeting in a disruptive manner. But the undisputed facts show this is not what happened here. The video evidence demonstrates Ms. Zink did not cause a disturbance when she began recording. The discussion between Ms. Zink, Mayor Ross and others was civil and orderly. There were no threats and the discussion took place prior to the council's discussion of items on the agenda. Unlike the circumstances in *Kast*, Ms. Zink's actions did not constitute an interruption of the council's public meeting. 144 Wn.2d at 818. The decision to eject Ms. Zink from the May 8, 2003, city council meeting was not reasonable under the circumstances.

*The city of Mesa violated the OPMA*

Mesa argues that even if a prohibition on audio and video recordings is an invalid condition precedent under the OPMA, the city did not violate the OPMA because the condition was imposed by the mayor, not the city's governing body. We disagree. The mayor was not some sort of a rogue third party. She was the city's chief executive and served as a presiding officer of the city council. When speaking to the 911 operator, Mayor Ross used the first person plural "we" throughout the brief conversation. In addition, while talking during Ms. Zink's recording, the mayor made abundantly clear she was speaking for the council when she directed Ms. Zink to stop recording. Ms. Zink has therefore stated a claim that the city of Mesa's governing body established an invalid condition precedent on her attendance at a public meeting.

*The facts do not support individual OPMA liability*

Although the city of Mesa is liable for mandamus and injunctive relief under RCW 42.30.130, personal liability against the individual elected officials requires further analysis under the statute. Former RCW 42.30.120(1). To state a claim against the individual officials, Ms. Zink also had to prove each member had "knowledge of the fact that the meeting is in violation" of the OPMA. *Id.* Notably, this mens rea element

is phrased so that the member must have knowledge the meeting itself was in violation of the OPMA, not knowledge that a particular action was in violation of the OPMA.

The trial court held Ms. Zink failed to establish individual liability because Mayor Ross's actions on May 8, 2003, were taken on advice given by the city's attorney. We agree with Ms. Zink that this finding is not supported by substantial evidence. At trial, the former city attorney testified he received a call from the city council the night Ms. Zink was arrested. From the evidence at trial, it appears no one consulted the city attorney until after the Mayor ordered Ms. Zink to stop recording and called 911. At the trial, Mayor Ross testified that the city attorney was not called until just before the sheriff's deputy showed up, and it was the city's clerk/treasurer, Teresa Standridge, who called at Mayor Ross's request.

The trial court's oral ruling, which was not incorporated into its written rulings, was there was no knowledge because none of the respondents had received training on the OPMA. This was an accurate finding based on the undisputed evidence admitted at trial and should be substituted as alternative grounds for affirming the trial court's judgment. RAP 2.5(a); *see Young v. Toyota Motor Sales*, 196 Wn.2d 310, 321, 472 P.3d 990 (2020) (citing *Abbott Corp. v. Warren*, 53 Wn.2d 399, 402, 333 P.2d 932 (1959)). It was not until 2014, well after the city council meeting at issue in this case, that our

13

legislature adopted a training requirement for public officials. RCW 42.30.205. This case

is an unfortunate example of one where no training took place.

Ms. Zink argues Mayor Ross and members of the city council likely knew their

actions were illegal. But as a plaintiff, Ms. Zink bore the burden of proof. Here, there is

simply no evidence of knowledge one way or the other. Given this circumstance, Ms.

Zink has not and cannot established a basis for individual liability under the OPMA.[4]

*The Zinks are entitled to reasonable attorney fees under the OPMA*

Attorney fees are available under RCW 42.30.120(4) for violations of the OPMA.

The Zinks appeal the trial court's attorney fee award, arguing it undervalued their claim

for fees.

Reviewing an attorney fee award involves mixed questions of law and fact. Legal

issues, such as whether attorney fees are applicable, are reviewed de novo. *See Dix v. ICT

Group, Inc*., 160 Wn.2d 826, 833, 161 P.3d 1016 (2007). But we afford deference to the

trial court's discretionary decisions about the amounts of a fee and cost award. *Gander v.

Yeager*, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012).

---

[4] In a cross appeal, Mesa argues the trial court erred by finding Ms. Zink's
OPMA claim was not subject to a jury trial. We decline to address this claim. Mesa
never requested a jury trial under CR 38. Further, any error with respect to the jury trial
issue was likely invited when counsel for Mesa consistently asserted in pretrial filings
and hearings that the OPMA claim was not triable to a jury.

*Award methodology*

The trial court denied the Zinks' full request for attorney fees after finding

problems with 4 of the 120 fee entries proffered by the Zinks' attorney. Although the

attorney requested almost $20,000 in fees, the court awarded only $5,000 based on

the low value of the Zinks' OPMA claim and the court's "years of experience as a trial

lawyer." Report of Proceedings (June 22, 2018) (RP) at 15. We agree with the Zinks

that the trial court's brief analysis constituted an abuse of discretion.

In awarding attorney fees, the court is required to apply the lodestar methodology.

*Mahler v. Szucs*, 135 Wn.2d 398, 433, 957 P.2d 632 (1998). This involves multiplying

the reasonable number of hours spent securing a successful recovery for the client by a

reasonable hourly rate. *Id.* at 434. "[I]n rare instances," the fee may be adjusted "upward

or downward in the trial court's discretion." *Id.* In considering whether to make such an

adjustment, the court may consider facts "'such as the contingent nature of success in the

lawsuit or the quality of legal representation, which have not *already* been taken into

account.'" *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 593-94, 675 P.2d 193

(1983) (plurality opinion) (quoting *Miles v. Sampson*, 675 F.2d 5, 8 (1st Cir. 1982)).

Here, the trial court's $5,000 attorney fee award was not issued pursuant to the

requisite lodestar methodology. The court did not identify the number of hours reasonably

15

expended on the Zinks' case or the applicable rate. Nor did the court actively assess the vast majority of the billing records submitted by the Zinks. "[T]he absence of an adequate record upon which to review a fee award will result in a remand of the award to the trial court to develop such a record." *Mahler*, 135 Wn.2d at 435.

Apart from the failure to comply with the lodestar methodology, the trial court also overemphasized the lack of economic recovery. The court stated it was awarding only $5,000 in part because: "[i]t started out as a $100 claim,[5] the most the [Zinks] could have gotten is a $100 claim. Nobody in their right mind would pay a lawyer $15,000 to pursue a $100 claim." RP (June 22, 2018) at 15. This reasoning undermines the very logic of the OPMA, which mandates an award of costs and attorney fees for plaintiffs who prevail in litigation of an OPMA claim, regardless of the limited dollar amount available in statutory civil penalties. *See* RCW 42.30.120(4) (The prevailing party "shall be awarded all costs, including reasonable attorneys' fees."). The OPMA is a remedial statute, subject to liberal construction. RCW 42.30.910. As such, its provision for award of attorney fees must be liberally construed. *Progressive Animal Welfare Soc. v. Univ. of*

---

[5] As mentioned previously, it was actually a claim with no monetary value. Statutory civil penalties (formerly $100 but now $500) are available only against individual members of a governing body and Ms. Zink has not made out a claim for individual liability under the OPMA. Attorney fees and costs are the only amounts recoverable by a prevailing party against municipal entities under the OPMA.

16

*Wash.*, 114 Wn.2d 677, 683, 790 P.2d 604 (1990). There is no liberal construction if the statutory requirement of attorney fees can be undermined because the statute provides only for limited penalties.

We reverse the trial court's OPMA fee award and remand for further proceedings.

The panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports, and that the remainder having no precedential value, shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

## *Negligent infliction of emotional distress*

### *Background facts*

Prior to trial, Mesa requested a CR 35 psychological examination of Ms. Zink related to her negligent infliction of emotional distress claim. Mesa's chosen examiner was Dr. Philip Barnard, a psychologist. Ms. Zink objected and Mesa filed a motion to compel. Ms. Zink argued her compliance was not justified because the proposed examination would not produce any relevant or admissible evidence. Ms. Zink offered she would participate in an exam limited in scope to only that information necessary to determine whether Ms. Zink suffered emotional distress or anxiety at the time of her alleged unlawful arrest.

The trial court ultimately ruled Ms. Zink had put her mental health at issue and, as a result, the defense was entitled to an examination under CR 35. The court refused to second guess Dr. Barnard's assessment of the appropriate scope of the examination. The court did limit dissemination of Ms. Zink's examination results.

After Ms. Zink refused to show up for the examination scheduled with Dr. Barnard, Mesa filed a motion to dismiss her negligent infliction of emotional distress claim as a sanction. The trial court determined Ms. Zink had willfully violated the order compelling an examination and, given trial was only six weeks away, dismissal of the claim was the only reasonable sanction. The court issued a written order giving Ms. Zink one last chance to submit to the CR 35 examination. Ms. Zink again refused to comply. The court then dismissed Ms. Zink's claim of negligent infliction of emotional distress.

*Analysis*

Ms. Zink challenges the trial court's CR 35 order and subsequent order dismissing her negligent infliction of emotional distress claim as a sanction for violating the order. We review discovery decisions, including sanctions, for abuse of discretion. *T.S. v. Boy Scouts of Am.*, 157 Wn.2d 416, 423, 138 P.3d 1053 (2006); *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997).

The record shows Ms. Zink knowingly and willfully violated the trial court's CR 35 order because she believed it was overbroad. In taking this stance, Ms. Zink invited the court's sanctions. The trial court had jurisdiction in the case and authority to issue discovery orders. As a result, Ms. Zink was not entitled to simply ignore the trial court's discovery order. *See Dike v. Dike*, 75 Wn.2d 1, 8, 448 P.2d 490 (1968) ("[W]here the court has jurisdiction of the parties and of the subject matter of the suit and the legal authority to make the order, a party refusing to obey it, however erroneously made, is liable for contempt."). Her options were either to seek relief in this court through discretionary review or to comply with the order and preserve an objection for appeal. *See id.*

The existence of a privilege can sometimes excuse a party's refusal to comply with an otherwise lawful order. *See id.* at 9. But here we are not talking about privilege. The CR 35 order did not require Ms. Zink to divulge information from an existing medical or treatment provider. She was instead required to participate in an evaluation with a provider retained by Mesa as part of a legal proceeding. A CR 35 examination may impinge upon a litigant's privacy interests, but it does not create a claim of privilege. *See Tietjen v. Dep't of Labor & Indus.*, 13 Wn. App. 86, 90, 534 P.2d 151 (1975) ("A [defense] CR 35 medical and mental examination is a legal proceeding [where the]

physician-patient relationship establishing privilege does not exist."). Further, many privacy interests are waived when a plaintiff files suit, including privacy implicated by a psychological examination when the trial court finds good cause for a CR 35 examination.

Because Ms. Zink neither sought interlocutory review of the CR 35 order nor submitted to the evaluation, the trial court was entitled to treat the discovery order as final and impose sanctions. Ms. Zink was warned that failure to comply with the terms of the CR 35 examination would result in dismissal of her negligent infliction of emotional distress claim, yet she refused to comply. Given this circumstance, the trial court's dismissal order was an appropriate exercise of discretion. Dismissal will not be reevaluated at this point, regardless of the propriety of the underlying discovery order.

*Dismissal mid-trial of 42 U.S.C. §1983 14th Amendment due process claim*

Ms. Zink appeals the trial court's directed verdict on her § 1983 due process claim. We review this issue de novo and assess whether, viewing the evidence in the light most favorable to Ms. Zink, she has established a prima facie case for relief. *In re Dependency of Schermer*, 161 Wn.2d 927, 939-40, 169 P.3d 452 (2007).

To establish a claim for relief under 42 U.S.C. § 1983, a plaintiff must prove two elements: (1) some person deprived them of a federal constitutional or statutory right and

(2) the person in question was acting under color of state law. *Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 11-12, 829 P.2d 765 (1992), *abrogated on other grounds by Chong Yim v. City of Seattle*, 194 Wn.2d 682, 702-03, 451 P.3d 694 (2020).

The trial court's directed verdict appeared to be based on the view that a violation of a nonfederal statute can form the basis of a § 1983 claim only if the statute purports to grant a property right; because the OPMA grants a liberty interest, not a property interest, § 1983 was inapplicable. To the extent this is an accurate summary of the trial court's decision, it was wrong. The United States Supreme Court has repeatedly held state laws can create protected liberty interests for purposes of § 1983 liability. *See, e.g.*, *Kentucky v. Thompson*, 490 U.S. 454, 459-60, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989).

On appeal, Mesa argues we should uphold the trial court's directed verdict because the OPMA creates only a privilege, not a right. In support of this claim, Mesa cites the following language from the Washington Supreme Court's decision in *Kast*: "The [OPMA] does not purport to grant citizens the right to interrupt meetings as they see fit; rather, citizens are granted a privilege to be present during public meetings so that they can remain informed of an agency's actions." 144 Wn.2d at 818.

We disagree with Mesa that the language in *Kast* means the OPMA does not create a statutory right. What the *Kast* court held was that a citizen's authority to attend a public

21

meeting is not unlimited; a disruptive person can be lawfully expelled from a public

meeting. But limitations do not mean the statute does not confer any rights. It simply

means the rights created are, like all other rights, not absolute. *See, e.g.*, *Perry Educ.*

*Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37, 45, 103 S. Ct. 948, 74 L. Ed. 2d 794

(1983) (right to free speech may be regulated by time, place manner restrictions). By its

plain terms, the OPMA grants individuals the right to attend public meetings so long as

they are not disruptive. Given this interpretation, Ms. Zink's § 1983 due process claim

does not fail based on the theory she merely had a "privilege," not a right.

The Zinks presented a viable claim that Mayor Ross, acting in her official capacity,

deprived Ms. Zink of her right to attend a public meeting by unlawfully conditioning

attendance on Ms. Zink's foregoing the video recording of the meeting. As a result, the

Zinks were entitled to a jury trial on their § 1983 due process claim against Mayor Ross.

The Zinks have also asserted sufficient facts for municipal liability. A local

government may only be sued under 42 U.S.C. § 1983 for an action that "executes a

policy statement, ordinance, regulation, or decision officially adopted and promulgated by

that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S. Ct. 2018,

56 L. Ed. 2d 611 (1978). The facts here indicate Mayor Ross, in her capacity as the

presiding officer at the city council meeting, made a deliberate choice to prohibit

members of the public from video recording council meetings. In making this

determination, Mayor Ross indicated she was enforcing the will of the council members

who did not wished to be on video. Given this record, Ms. Zink has asserted facts

sufficient to establish municipal and individual liability. *See Pembaur v. City of*

*Cincinnati*, 475 U.S. 469, 483, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) ("[M]unicipal

liability under § 1983 attaches where—and only where—a deliberate choice to follow a

course of action is made from among various alternatives by the official or officials

responsible for establishing final policy with respect to the subject matter in question.").

The trial court's directed verdict must therefore be reversed as to Mayor Ross and the city

of Mesa.[6]

*Summary judgment rulings*

The Zinks appeal the trial court's summary judgment dismissal of their claims for

false arrest, false imprisonment, malicious prosecution, Fourth Amendment / 42 U.S.C.

§ 1983, intentional infliction of emotional distress, and loss of consortium. We review

de novo, viewing the evidence in the light most favorable to the Zinks.

---

[6] Mesa claims qualified immunity prevents Ms. Zink from proceeding on her Fourteenth Amendment due process claim. However, the trial court expressly declined to reach that issue, and Mesa failed to adequately brief it on appeal. Accordingly, we also decline to address qualified immunity.

23

*False arrest and false imprisonment*

"False arrest occurs when a law enforcement officer, or one claiming to have the powers of a police officer, unlawfully restrains or imprisons another by physical force, threat of force, or conduct reasonably implying the use of force against the detainee should [they] resist." *Demelash v. Ross Stores, Inc.*, 105 Wn. App. 508, 529, 20 P.3d 447 (2001) (citing *Bender v. City of Seattle*, 99 Wn.2d 582, 591, 664 P.2d 492 (1983)). "The gist of false arrest and false imprisonment is essentially the same, viz., the unlawful violation of a person's right of personal liberty, and a false imprisonment occurs whenever a false arrest occurs." *Youker v. Douglas County*, 162 Wn. App. 448, 465, 258 P.3d 60 (2011).

Mesa claims it is entitled to summary judgment because Ms. Zink's arrest and imprisonment were conducted by an independent third party, a deputy of the Franklin County Sheriff's Office. However, the rule is not so simple. An individual is not liable for false arrest or imprisonment when they do "nothing more than detail [their] version of the facts to [law enforcement] and ask for assistance, leaving it to the officer to determine what is the appropriate response." *McCord v. Tielsch*, 14 Wn. App. 564, 566, 544 P.2d 56 (1975). But liability can attach if the individual "invites or participates" in the arrest by law enforcement. *Id.* at 566. This is also known as instigation. RESTATEMENT (SECOND)

24

OF TORTS § 45A cmt. c, at 70 (AM. LAW INST.1965). An individual will not be liable for instigating a false arrest if they "leave[] to the police the decision as to what shall be done about any arrest, without persuading or influencing them." *Id.*

Considering the evidence in the light most favorable to the Zinks, one could conclude Mayor Ross and council member Fay instigated Ms. Zink's arrest and imprisonment by not only calling 911 with a request for law enforcement to remove Ms. Zink, but also actively trying to convince the responding sheriff's deputy that Ms. Zink had no legal right to record the council meeting. The activities of Mayor Ross and council member Fay went beyond merely providing truthful information to law enforcement and then allowing law enforcement to take independent action. The city officials looked through statute books and relayed legal claims in an effort to convince the sheriff's deputy there was a basis for arrest. Although the case against council member Fay has been voluntarily dismissed, the questions of fact regarding Mayor Ross's responsibility mean the order of summary judgment as to false arrest and false imprisonment was unwarranted as to Mayor Ross and the city of Mesa. *See, e.g.*,

*Bender*, 99 Wn.2d at 587 (city can be held vicariously liable for false arrest).[7]

### *Malicious prosecution*

To sustain an action for malicious prosecution under the common law, a plaintiff

needs to prove five elements:

> (1) that the prosecution claimed to have been malicious was instituted or
> continued by the defendant; (2) that there was want of probable cause for
> the institution or continuation of the prosecution; (3) that the proceedings
> were instituted or continued through malice; (4) that the proceedings
> terminated on the merits in favor of the plaintiff, or were abandoned; and
> (5) that the plaintiff suffered injury or damage as a result of the prosecution.

*Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 497, 125 P.2d 681 (1942).

"[M]alice and want of probable cause constitute the gist of" an action for malicious

prosecution. *Id.*

Mesa claims the Zinks have not stated a valid claim for malicious prosecution

for three reasons: (1) none of the Mesa defendants instituted the case against Ms. Zink,

(2) there was probable cause to support the case against Ms. Zink, and (3) the case against

Ms. Zink did not amount to an actual prosecution. All three of Mesa's arguments fail.

---

[7] There is no evidence showing any of the other council members played a part in Ms. Zink's arrest and detention. Thus, summary judgment as to the remaining council members was appropriate. With respect to the city of Mesa, it could be discretionary immunity applies. However, the trial court expressly declined to reach this issue and neither party adequately briefs it on appeal. If immunity applies, it may be addressed on remand.

First, as previously stated, there is evidence Mayor Ross and council member Fay instigated the case against Ms. Zink by calling 911, asking for Ms. Zink to be removed, and then actively engaging with the responding deputy in order to convince him there was a legal basis for believing Ms. Zink had violated the law.

Second, because Ms. Zink had a right to attend Mesa's council meeting regardless of whether she chose to video record the proceedings, there was not probable cause to arrest her for trespass. Former RCW 9A.52.010(3) (1985); former RCW 9A.52.070 (1979); RCW 9A.52.090(2).

Third, criminal charges were brought against Ms. Zink. The case was initiated by a criminal citation, as permitted by CrRLJ 2.1(b)(1). Ms. Zink made an initial court appearance on the citation, and was scheduled to return for a pretrial hearing. The fact that the case was later dismissed confirms a case existed; it does not mean no case was ever brought.

Given the documented animus between Ms. Zink and the city of Mesa, there is evidence to support all five elements of the malicious prosecution claim. Ms. Zink is therefore entitled to a jury trial on this issue as to Mayor Ross and the city of Mesa, which may be held liable under a theory of respondeat superior. *See Evans v. Tacoma Sch. Dist. No. 10*, 195 Wn. App. 25, 37, 380 P.3d 553 (2016).

*Fourth Amendment 42 U.S.C. § 1983 claim*

The Fourth Amendment protects the "right of the people to be secure in their persons . . . against unreasonable searches and seizures" by governmental officials. U.S. CONST. amend. IV. 42 U.S.C. § 1983 provides individuals "'a method for vindicating federal rights,'" such as a violation of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)).

The Zinks' Fourth Amendment claim is that Ms. Zink was unlawfully arrested without probable cause. Like the tort claim for false arrest, this claim against the individual Mesa defendants turns on whether there is proof Ms. Zink was arrested without probable cause and that one of the defendant governmental officials played a role in instigating the arrest. *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). The claim against the city of Mesa turns on whether there is proof Ms. Zink's arrest was due to an official custom or policy. *Id*.; s*ee also Monell,* 436 U.S. at 694.

As previously discussed, the facts indicate both Mayor Ross and council member Fay played a part in encouraging Ms. Zink's arrest. This is sufficient to state individual claims under § 1983. While the case against council member Fay has been voluntary dismissed, the claim against Mayor Ross should have been allowed to go to trial. We do

28

agree with the trial court that there are insufficient facts to justify a § 1983 false arrest

claim against the other individual Mesa defendants.

Although the Zinks have proffered sufficient facts for individual liability, they

have not presented sufficient facts against the city of Mesa. The record is devoid of any

evidence Ms. Zink was arrested pursuant to an official city policy or custom. In her brief,

Ms. Zink posits it was the city of Mesa's policy to retaliate against her based on her prior

litigation with the city. This is nothing more than speculation. Regardless of whether the

city was retaliating against Ms. Zink, proof of one individual instance of misconduct is

not suggestive of a broader custom or policy.

Mesa claims that even if Ms. Zink was arrested without probable cause, Mayor

Ross is nevertheless entitled to qualified immunity. Qualified immunity can insulate a

governmental official from liability for an unlawful arrest under § 1983. However, Mesa

does not provide any argument in support of this defense. Instead, Mesa simply asserts

Mayor Ross did not cause Ms. Zink's arrest; a factual claim we have already discussed

and rejected. The question of qualified immunity is different from causation. Qualified

immunity turns on whether a governmental official's conduct was objectively reasonable

based on clearly established law. *See Furfaro v. City of Seattle*, 144 Wn.2d 363, 384,

27 P.3d 1160 (2001). This is a complicated standard. Because Mesa has not adequately

29

briefed the issue of qualified immunity, we decline to reach the merits of this defense.

*See State v. Thomas*, 150 Wn.2d 821, 868-69, 83 P.3d 970 (2004) (The court "will not

review issues for which inadequate argument has been briefed or only passing treatment

has been made."). The § 1983 claim against Mayor Ross is instead reversed and

remanded.

### *The court did not err in dismissing the intentional infliction of emotional distress claim*

"The basic elements of the tort [of intentional infliction of emotional distress] are

(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional

distress; and (3) actual result to the plaintiff of severe emotional distress." *Rice v.

Janovich*, 109 Wn.2d 48, 61, 742 P.2d 1230 (1987) (citing RESTATEMENT (SECOND) OF

TORTS § 46 (AM. LAW INST. 1965)).[8]

The Zinks have not produced sufficient evidence to support the third element of

the intentional infliction of emotional distress claim. To qualify as severe, a plaintiff's

claim of emotional distress must be more than "'transient.'" *Kloepfel v. Bokor*, 149

Wn.2d 192, 198, 66 P.3d 630 (2003) (quoting RESTATEMENT (SECOND) OF TORTS § 46

cmt. j, at 77 (AM. LAW INST. 1965)). The facts in the record before us do not support this

---

[8] The torts of outrage and intentional infliction of emotional distress are synonymous. *Kloepfel v. Boker*, 149 Wn.2d 192, 193 n.1, 66 P.3d 630 (2003).

showing. While Ms. Zink claims to have suffered a panic attack after her arrest, there is no evidence showing her distress was ongoing or that it led Ms. Zink to seek professional help. The Zinks' claim for intentional infliction of emotional distress therefore fails. *See Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wn. App. 859, 872-73, 324 P.3d 763 (2014) (general statements that victim was "traumatized and very upset" insufficient to prove severity without evidence of intensity and duration of those symptoms)

### *Loss of consortium claims*

Ms. Zink does not devote a section of her brief to the loss of consortium claim. Because this claim has not been developed, we will not review it further. *See State v. Farmer*, 116 Wn.2d 414, 432, 805 P.2d 200, 812 P.2d 858 (1991); *Univ. of Wash. v. GEICO*, 200 Wn. App. 455, 465 n.3, 404 P.3d 559 (2017). The trial court's loss of consortium ruling is affirmed.

### *Trial court costs*

The Zinks takes issue with the trial court not awarding as a cost the $200 statutory attorney fee under RCW 4.84.080(1). This request is foreclosed by *City of Montesano v. Blair*, 12 Wash. 188, 189-90, 40 P. 731 (1895) (statutory fees are not available when the plaintiff is entitled to an award of reasonable attorney fees).

Although the trial court denied some other aspects of the Zinks' requested costs, Ms. Zink does not devote a portion of her brief to this issue. As such, we will not further review the cost award.

CONCLUSION[9]

This matter is affirmed in part, reversed in part, and remanded for further proceedings as follows:

- The trial court's judgment that the city of Mesa, but not its individual officials, violated the OPMA is affirmed. However, the related award of attorney fees is reversed and remanded. The existing award of costs and denial of statutory attorney fees is affirmed.

- The trial court's dismissal of Ms. Zink's negligent infliction of emotional distress claim as a discovery sanction is affirmed.

- The order dismissing Ms. Zink's Fourteenth Amendment 42 U.S. C. § 1983 claim is reversed as to Mayor Ross and the city of Mesa.

- The orders of summary judgment as to false arrest, false imprisonment, and malicious prosecution as to Mayor Ross and the city of Mesa are reversed and

---

[9] Mesa has filed a cross appeal on several issues. The merits of the cross appeal are mooted by our disposition of Ms. Zink's appeal.

remanded.

- The Fourth Amendment 42 U.S. C. § 1983 claim as to Mayor Ross is reversed and remanded.

- The order of summary judgment as to Ms. Zink's claim for intentional infliction of emotional distress is affirmed.

- Dismissal of the claim for loss of consortium is affirmed.

_____
Pennell, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Lawrence-Berrey, J.