

**FILED**
**OCTOBER 3, 2024**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DONNA ZINK and JEFF ZINK, wife and husband, and the marital community composed thereof, | ) ) ) ) | No. 39878-1-III |
| Respondent, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| CITY OF MESA, a Washington Municipal Corporation; DUANA RAE ROSS, a married woman; DAVID FERGUSON, a married man; and ELIZABETH DAVIS, a married woman, | ) ) ) ) ) ) | |
| Appellant. | ) ) | |

Staab, J. — The city of Mesa (City) appeals the trial court's amended judgment awarding Donna Zink $16,541.75 in attorney fees plus 12 percent interest dating back to and accruing from the date of the original verdict. The City contends the trial court (1) failed to develop the record and enter sufficient written findings of fact and conclusions of law for its award of attorney fees, (2) erred when it awarded prejudgment interest, (3) erred when it set the interest rate at 12 percent, and (4) erred when it awarded interest after it paid Zink's court costs to the county clerk of court.

No. 39878-1-III
*Zink v. City of Mesa*

We conclude the trial court's amended judgment and oral findings are sufficient for our review and we affirm the attorney fee award. We also affirm the trial court's decision to set the interest rate at 12 percent. However, we conclude that the trial court erred when it awarded interest dating back to and accruing from the date of the original verdict. We reverse and remand the award of interest and instruct the trial court on remand to award interest accruing from the date the court entered its amended judgment, July 18, 2023.

BACKGROUND

This is the third appeal in the saga of Donna Zink versus the city of Mesa stemming from Franklin County Superior Court Docket No. 05-2-50557-8. The underlying facts and procedure of this case are documented in our prior opinions. *Zink v. City of Mesa*, 17 Wn. App. 2d 701, 487 P.3d 902 (2021) (published in part) (*Zink* I); *Zink v. City of Mesa*, No. 39670-3-III (Wash. Ct. App. Aug. 20, 2024) (unpublished), https://www.courts.wa.gov /opinions/pdf/396703_ord.pdf (*Zink* II). The parties are aware of the facts. We therefore limit our discussion to the facts necessary to resolve the issues raised in the present appeal.

Zink sued the City, the mayor, three city council members, Franklin County, the Franklin County Sheriff's Office, the elected sheriff, and the involved deputies. Zink alleged nine causes of action, including violation of the Open Public Meetings Act of 1971 (OPMA), ch. 42.30 RCW. After the jury returned a verdict for the defense on the OPMA claim, the trial court ruled posttrial that the OPMA case was not triable to a jury

2

as a matter of law and found that it was not bound by the jury's verdict. The court set aside the jury's verdict and found that the City violated the OPMA when it prohibited Zink from recording the meeting.

Zink sought $19,411.65 in attorney fees and costs pursuant to the OPMA, which mandates an award of attorney fees for the prevailing party in OPMA violation actions. RCW 42.30.120(4). She relied on a fee declaration from her former attorney, Ronald St. Hilaire, in which he documented his billings and time entries on the case totaling $16,541.75.

The trial court denied Zink's full request for attorney fees after finding problems with a few of the fee entries proffered by her attorney. *Id.* The court awarded only $5,000 in attorney fees, based on the low value of the OPMA claim and the court's experience, and awarded $1,511.49 in costs, for a total judgment against the City of $6,511.49.

On appeal, we affirmed the trial court's order granting Zink's OPMA claim against the City and concluded that the trial court abused its discretion in deciding the amount of Zink's attorney fees. Specifically, we concluded the trial court failed to apply the lodestar methodology when it awarded fees and that it overemphasized the lack of economic recovery when crafting its award. We reversed and remanded the attorney fee award for further proceedings. *Zink* I, 17 Wn. App. 2d at 715. In addition, our court commissioner ordered the City to pay Zink's $8,728.65 in appeal costs.

3

*Remanded proceedings*

In April 2022, Zink motioned the trial court to reassess the attorney fee award in accordance with our mandate and to enter judgment. She requested the court award $16,541.75 in attorney fees, plus 12 percent interest from January 18, 2018 (the date the trial court entered its verdict) until payment in full. In support of her motion, Zink submitted the same fee declaration that she submitted after the jury trial.

Around the same time, the City tendered payment of the costs awarded by both the trial court and this court, totaling $10,240.14, to the Franklin County Court Clerk. Eventually, the court ordered these funds to be released to Zink. Upon receipt of the check, Zink filed a partial satisfaction of judgment and asserted that the City still owed her $490.72 toward the costs, plus accrued interest.

After the parties conducted discovery on attorney fees, Zink again moved the trial court to reassess the attorney fee award in compliance with our mandate and award attorney fees of $16,541.75 based on her former attorney's fee declaration. The City contested the motion and amount of fees requested by Zink and submitted a declaration of its own expert to support its position.

The trial court held a hearing on Zink's motion to recalculate the attorney fee award. Following argument by the parties as to what award amount was reasonable, the court explained its ruling:

I have reviewed the June 15, 2018, declaration of Ron St. Hilaire [Zink's former attorney]. . . I understand he spent $1,292 to prepare it for, I'll say, court's consumption. But he laid it out pretty clear. And it looks like billings I've seen from any other attorney for many, many years.

Reviewing entries that he—he details his entries just like everybody else does. Mr. St. Hilaire's been doing this a long time. He's actually fairly known, skilled in litigation of this nature.

He has—his rate increased over the years, which it probably should have. I think the record is clear at this point that, applying the lodestar method, he had—his billing rate was $180 to $275, increasing over a 13-year period. He had $90 an hour for some paralegal time, which is appropriate as well, at a reduced rate.

He lays out his hours of—it was 84.53 hours over the course of nine years. He had an additional billing of 4.7 hours at $275 an hour, which is the $12,092 [sic] that—$0.50—that the Court referenced that he had to use to put this in court consumptionable detail and that he had spent that time reasonably to go through and separate everything out.

And, having done litigation like this, often times, when your original billing is not separated out although it should be when you know that you've got statutory attorney—or you've got attorneys' fees that are—if there's a verdict, there's mandatory attorneys' fees.

So—but it was reasonable under the circumstances over the course of many years.
. . .
But the attorneys' fees as presented in the amount of $16,541.75 are appropriate and reasonable under the statute.
. . . .
I'm finding that the record is developed sufficiently.

Rep. of Proc. (RP) (Mar. 21, 2023) at 22-24. After more argument over what statutory interest rate was appropriate, whether the attorney fee award was liquidated, and whether the money the City paid into the registry was accessible, the court announced its ruling:

So here's—here's what the Court's going to do with regarding attorneys' fees. The Court is going to sign the judgment award of attorneys' fees, the attorneys' fees in amount of $16,541.75. I previously discussed why I believe that they are reasonable under the lodestar method and why I

believe they are consistent with the OPMA's limited award but yet encourage people to litigate and hold the government accountable.

However, what I've done is state interest at 12 percent starting on January 18, 2018. I reserve for a further order with what that number is. The plaintiffs shall submit their proposed judgment with calculations by April 4, 2023. That's two weeks. And defendant by 04/11/23.

RP (Mar. 21, 2023) at 34.

Following the hearing, the court entered a written judgment awarding attorney fees consistent with its oral ruling:

The Court finds that the number of hours submitted by Mr. St. Hilaire were reasonably necessary to litigate the violation of the OPMA. The Court further finds that the per hour rates of $180-$275 (increasing over a period of thirteen (13) years) for Mr. St. Hilaire's attorney time and $90 per hour for paralegal time to litigate the [c]ity of Mesa's OPMA violation are reasonable. The court awards the Zinks $16,541.75 for attorney fees associated with litigating the violation of the OPMA by the [c]ity of Mesa plus 12 [percent] interest to accrue from January 18, 2018, the date of the verdict, until paid in full.

Clerk's Papers (CP) at 338. The court "reserved for further order" a total judgment amount pending the briefing and proposed judgments to be submitted by the parties.

CP at 338.

The parties continued to disagree about the issue of interest. Eventually, the City noted the matter for another hearing. After clarifying its earlier ruling and hearing argument from counsel, the court noted that "the Open Public Meetings Act is a civil remedy. It is not a tort." RP (July 18, 2023) at 77. The court then ordered post-

6

judgment interest on its award of attorney fees to start accruing as of January 18, 2018, the date of its original judgment.

The City timely appeals.

ANALYSIS

1. AWARD OF ATTORNEY FEES

The City contends that the trial court failed to comply with our mandate in *Zink* I and develop a record related to its award of attorney fees. It argues the court was required to enter written findings related to its award and hold an evidentiary hearing as to what attorney fees were reasonable. Zink contends the trial court acted within its discretion when awarding attorney fees on remand because it properly applied the lodestar method and created an adequate record for review. We agree with Zink and conclude that the trial court complied with our prior decision by applying the lodestar method, articulating its reasoning on the record, and entering a judgment containing its findings and decision to award attorney fees.

"Fee decisions are entrusted to the discretion of the trial court." *Mahler v. Szucs*, 135 Wn.2d 398, 435, 957 P.2d 632 (1998). We review the reasonableness of an award of attorney fees for an abuse of discretion. *Rettkowski v. Dep't of Ecology*, 128 Wn.2d 508, 519, 910 P.2d 462 (1996). A trial court abuses its discretion when it exercises its discretion in a manifestly unreasonable manner. *Id*. at 519. As we noted in *Zink* I, "we

7

afford deference to the trial court's discretionary decisions about the amounts of a fee and cost award." *Zink*, 17 Wn. App. 2d at 713.

In *Zink* I, we reversed and remanded the attorney fee award with specific instructions for the trial court to apply the lodestar methodology and to develop an "adequate record" for our review when crafting its revised award. 17 Wn. App. 2d at 713-15.

When crafting an attorney fee award using the lodestar methodology, a trial court must first determine that counsel expended a reasonable number of hours in securing a successful recovery for the client. *Mahler*, 135 Wn.2d at 434. The trial court should exclude wasteful or duplicative hours and any hours pertaining to unsuccessful theories or claims. *Id.* at 434. The lodestar fee is then "calculated by multiplying the reasonable hourly rate by the reasonable number of hours incurred in obtaining the successful result," and may "be adjusted upward or downward in the trial court's discretion." *Id.* at 434.

Courts should "take an *active* role in assessing the reasonableness of [attorney] fee awards . . . [and] should not simply accept [without question] fee affidavits from counsel. *Id.* at 434-35. "[F]indings of fact and conclusions of law are required to establish" "an adequate record" on a fee award decision. *Id.* at 435. In addition, a trial court is required to segregate attorney fee awards where fees are authorized for only some of the claims.

*Gaglidari v. Denny's Rest., Inc.*, 117 Wn.2d 426, 450, 815 P.2d 1362 (1991); *see also*

*Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 743-44, 733 P.2d 208 (1987).

Here, the judgment contains the trial court's written findings that (1) the number

of hours submitted by Zink's former attorney were reasonably necessary to litigate the

OPMA violation claim, (2) the per hour rates of $180-$275 (which increased over a

period of 13 years) for the attorney's time and $90 for his paralegal were reasonable, and

(3) that the total attorney fee award is $16,541.75, plus 12 percent "post-verdict interest."

CP at 353. During its oral ruling, the trial court explained that it arrived at the total award

amount based on the hourly rates multiplied by the hours documented in the fee

declaration of Zink's former attorney. *See* RP (Mar. 21, 2023) at 18, 22-23. The trial

court also noted that Zink's former attorney "separate[d] everything out," seemingly

referring to segregation of the time entries related to the OPMA claim. RP (Mar. 21,

2023) at 23.

The court's findings are supported by the evidence. In his fee declaration, Zink's

former attorney explains that he attempted to segregate fees related to the OPMA claim,

but that

> [b]ecause all of the claims arose from Donna Zink's video recording and
> arrest at the [c]ity of Mesa City Council Meeting, the pertinent facts to the
> Open Public Meetings Act were the same as those facts on which all of the
> other claims were based. As a result, virtually all of the discovery
> conducted while I was attorney for the Plaintiffs was applicable to Open
> Public Meetings Act claim, or was so inextricably intertwined that
> segregation of that time is not possible.

9

CP at 143. Zink's former attorney further explains how he went about segregating the

time he spent litigating the OPMA claim:

> To arrive at the OPMA time, I reviewed the detailed billing records and pleadings and other documents in the file to determine which portion of the total time was related to the OPMA or was necessary for the OPMA, regardless of the presence or absence of other claims. Some of these were obvious based on the description of work performed. Other entries required my review of pleadings, discovery, and correspondence to ascertain the portion of time necessary for the OPMA claims.

CP at 144.

Considering the written judgment, the trial court's oral ruling, and the documents

the trial court considered when it awarded attorney fees, we are satisfied that the trial

court complied with our mandate in *Zink* I to apply the lodestar method and create an

adequate record for our review on remand. The trial court did not abuse its discretion

when it awarded Zink $16,541.75 in attorney fees.

The City contends the trial court did not develop, or permit the City to develop, an

adequate record for review of the amount of fees reasonably incurred for litigating the

OPMA claim. This argument fails. As discussed above, the trial court developed an

adequate record for review. Moreover, the City had ample opportunity to develop a

record and challenge the fee declaration submitted by Zink. The City had the chance to

conduct discovery, hire an expert to review and refute the fee declaration, and submit

multiple briefs challenging the fee award. Whether and to what extent an evidentiary

hearing was necessary was within the trial court's discretion, and the City fails to show that this discretion was abused here.

The City argues that the trial court should have entered written findings articulating its specific reasoning supporting the attorney fee award amount. Contrary to the City's argument, the judgment does contain the court's written findings, which demonstrate that the court applied the lodestar method, consistent with our mandate in *Zink* I. Even if those written findings were inadequate, we can look to the trial court's oral findings to supplement its written findings, so long as there is no conflict between them. *See State v. Holland*, 98 Wn.2d 507, 517-18, 656 P.2d 1056 (1983). The trial court's oral findings here are consistent with its written findings, both of which show the court applied the lodestar methodology when crafting its attorney fee award.

The City suggests that the trial court failed to segregate the attorney fees related to the OPMA claim from the other unsuccessful claims. However, as discussed, the trial court noted that it reviewed the time entries in the fee declaration, and that Zink's former attorney "separate[d] everything out." RP (Mar. 21, 2023) at 23. The trial court was within its discretion, after reviewing the fee declaration, to conclude that Zink's former attorney properly segregated the time he worked on the OPMA claim from his other billing entries.

Next, the City raises two credibility challenges to the evidence. First, it takes issue with the fee declaration, arguing that Zink's former attorney attempted to segregate

11

the time he worked on the OPMA claim 13 years after the fact. Second, the City contends the trial court accepted without question the fee declaration when it awarded fees. However, the trial court made clear that it reviewed the fee declaration and billed time entries, and that it also considered the City's expert declaration when it arrived at its attorney fee award and reasonableness determination. It was within the court's discretion to disagree with the expert opinion submitted by the City and to find the fee declaration sufficient to apply the lodestar methodology to. We do not review issues of credibility on appeal, as those determinations are solely for the trier of fact. *Morse v. Antonellis*, 149 Wn.2d 572, 574, 70 P.3d 125 (2003).

Finally, the City seems to challenge the total amount of the attorney fee award. The City argues the fee declaration shows that the total billed on the OPMA litigation was $15,249.25, but that Zink "misrepresents the claim as $16,541.75, and that amount was awarded by the Court." Br. of Appellant at 10. As Zink notes, the total billed on the OPMA claim was $15,249.25, but the trial court added $1,292.50, which was for 4.7 hours that Zink's former attorney spent segregating his time entries. Br. of Resp't at 27 n.11. We decline to review whether the inclusion of 4.7 hours was reasonable because this issue is not preserved. The City failed to raise this objection before the trial court and fails to assign error to the decision on appeal. RAP 10.3(a)(4).

The trial court complied with our mandate in *Zink* I by creating an adequate record for this court to review the attorney fee award amount. Thus, the trial court did not abuse its discretion when it awarded attorney fees.

2.   INTEREST ON ATTORNEY FEES

The City contends the trial court's award of interest dating back to the original judgment was not proper because attorney fees are not liquidated damages and this court reversed the first award of attorney fees and remanded for a new judgement. Zink contends that interest was appropriate because her claim for attorney fees is liquidated; and the trial court was required to award interest dating back to and accruing from the "date of the verdict under RCW 4.56.110(3)(a) or (6)." We conclude the trial court did not err by imposing interest on the judgment for attorney fees, but did err when it awarded interest dating back to and accruing from the date of the original verdict.

Before we address the substantive issue, we clarify a few terms. The trial court did not impose prejudgment interest on the attorney fees. "Prejudgment interest compensates a plaintiff for the 'use value' of damages incurred from the time of the loss until the date of judgment." *Humphrey Indus., Ltd. v. Clay St. Assocs., LLC*, 176 Wn.2d 662, 672, 295 P.3d 231 (2013). That is not what the trial court did here. Instead, the court imposed postjudgment interest, commencing on the date of the original verdict. Because the court did not impose prejudgment interest, it is not necessary for us to decide whether attorney fees are considered liquidated.

13

The City contends that the trial court erred by imposing interest on the judgment for attorney fees as of the date of the original verdict. Zink contends the trial court correctly awarded interest dating back to and accruing from the date of the original verdict pursuant to RCW 4.56.110(3)(a) and RCW 4.56.110(6).

Trial courts have the responsibility to enter a judgment that complies with RCW 4.56.110, which governs interest on judgments. *Safeco Ins. Co. v. JMG Rest, Inc.*, 37 Wn. App. 1, 23, 680 P.2d 409 (1984). We review the application of a statute to a particular set of facts de novo. *Hadley v. Maxwell*, 120 Wn. App. 137, 145, 84 P.3d 286 (2004) (reviewing an award of interest under RCW 4.56.110 de novo).

In this case, the trial court awarded interest dating back to and accruing from the date of the original verdict under RCW 4.56.110(6), which provides, in relevant part:

> Except as provided under subsections (1) through (5) of this section, judgments shall bear interest from the date of entry at the maximum rate permitted under RCW 19.52.020 on the date of entry thereof. *In any case where a court is directed on review to enter judgment on a verdict or in any case where a judgment entered on a verdict is wholly or partly affirmed on review, interest on the judgment or on that portion of the judgment affirmed shall date back to and shall accrue from the date the verdict was rendered.*

RCW 4.56.110(6) (emphasis added).

Our Supreme Court analyzed the emphasized language above in the context of an attorney fee award in *Fisher Properties, Inc. v. Arden-Mayfair, Inc.*, 115 Wn.2d 364, 798 P.2d 799 (1990). In *Fisher*, the Supreme Court affirmed some of the plaintiff's claims and reversed others. The court also reversed the award of attorney fees and remanded for

14

reconsideration, holding that the trial court erred in awarding the plaintiff almost all of its claimed attorney fees under a statute that only authorized attorney fees for one of the successful claims. *Id.* (citing *Fisher Prop., Inc. v. Arden-Mayfair, Inc.*, 106 Wn.2d 826, 849-50, 726 P.2d 8 (1986)). The court remanded and ordered the trial court to reassess its award of attorney fees under the statute. *Id.* at 367 (citing *Fisher Properties, Inc.,* 106 Wn.2d at 850, 855). On remand, the trial court entered a new judgment for attorney fees and then ordered interest on the amended judgment to run from the date of the original judgment. *Id.* at 367-68.

The defendant appealed again and the Supreme Court held that the trial court erred when it awarded interest to run from the date of the original judgment. *Id.* at 368, 373-75. Citing language in former RCW 4.56.110(3) (1989), which is identical to the emphasized language of current RCW 4.56.110(6), the court explained that because it reversed and remanded for the trial court to reassess the entire award on attorney fees, it was error for the trial court to order interest to run from the date of the original judgment under the statute:

> The trial court erred in directing interest to run on the portions of the judgment reversed by this court from the date of the original judgment. This court's reversal wiped out the original judgment and required new findings and a new judgment. Thus, interest on the damages for cost of restoration and the award of attorney fees must run from the date of the new judgment.

*Id.* at 374-75.

*Fisher* controls the issue in this case. In *Zink* I, we affirmed the trial court's verdict, but reversed and remanded the award of attorney fees "as it was too restrictive." *Zink* I, 17 Wn. App. 2d at 704. In other words, we affirmed the verdict but reversed the judgment of attorney fees and remanded for the trial court to reassess the award using the lodestar methodology. *See Id.* at 714-15. Since we did not affirm any portion of the judgment awarding attorney fees, it was error for the trial court to impose interest on the attorney fees dating back to its original judgment. On remand the trial court should award interest on its judgment for attorney fees from the date of entry of the amended judgment, July 18, 2023.

3. APPLICABLE INTEREST RATE

The City contends that the amount of interest, if allowed, should be controlled by RCW 4.56.110(3)(a). Zink contends interest was properly awarded at 12 percent per annum under RCW 4.56.110(6). We agree with Zink.

RCW 4.56.110(3)(a) governs the interest rate applicable to judgments founded upon tortious conduct of a public agency. The statute provides:

> *Judgments founded on the tortious conduct of a "public agency" as defined in RCW 42.30.020 shall bear interest from the date of entry at two percentage points above the equivalent coupon issue yield*, as published by the board of governors of the federal reserve system, of the average bill rate for twenty-six week treasury bills as determined at the first bill market auction conducted during the calendar month immediately preceding the date of entry.

(Emphasis added.)

16

On the other hand, RCW 4.56.110(6), the statute's catchall provision, sets the interest rate at 12 percent per annum.[1]  *Park Place Motors, Ltd. v. Elite Cornerstone Constr., LLC*, 18 Wn. App. 2d 748, 758, 493 P.3d 136 (2021); *see also Teamsters Loc. 839 v. Benton County*, 15 Wn. App. 2d 335, 351, 475 P.3d 984 (2020) ("In general, the judgment interest rate is 12 percent per annum, unless otherwise provided for in RCW 4.56.110.").

The City contends that since it qualifies as a "public agency," as defined in RCW 42.30.020,[2] the proper interest rate is governed by RCW 4.56.110(3)(a).  This argument fails.  While the City may qualify as a "public agency," the award of attorney fees was not "founded on tortious conduct."  As we explained in *Zink* I, "[t]he OPMA is a remedial statute" "that broadly protects the public's right of access to all forms of public meetings."  17 Wn. App. 2d. at 715, 704.

All considered, we conclude that RCW 4.56.110(6) applies and the trial court properly set the interest rate at 12 percent per annum.

---

[1] RCW 4.56.110(6) provides that judgment shall bear interest at the maximum rate permitted under RCW 19.52.020.  RCW 19.52.020(1)(a) provides that 12 percent annum is the maximum allowable interest rate.

[2] RCW 42.30.020(1)(b) defines "public agency" in part as any "city . . . of the state of Washington."

4.  EFFECT OF PARTIAL TENDER TO THE COURT CLERK

The City also challenges the imposition of interest on the attorney fee award, suggesting that its prior tender of payment to the Franklin County Court Clerk precluded an award of interest. We disagree.

In July 2018, the City tendered payment of $6,511.49 to the Franklin County Court Clerk to satisfy the original judgment entered by the trial court, which consisted of attorney fees and costs. In *Zink* I, we affirmed the award of costs, reversed the award of attorney fees, and awarded Zink her appeal costs. Zink I, No. 36994-3-III, slip op. (unpublished portion) at 32-33, https://www.courts.wa.gov/opinions/pdf/369943_ord.pdf. In April 2022, prior to the trial court's hearing on its amended attorney fee award, the City tendered $3,728.65 as payment to cover the ordered costs. The City's tender of judgment included tables to explain how it calculated the awarded costs and payments:

The amount is calculated as follows:

| | |
|---|---|
| Court of Appeals – Costs | $ 8,728.65 |
| Costs Awarded by the Superior Court | $ 1,511.49 |
| | $10,240.14 |

| | |
|---|---|
| Amount Previously Tendered to the Court on 7/11/2018 | $ 6,511.49 |
| Amount Tendered to the Court with this Tender of Judgment | $ 3,728.65 |
| Total Amount in Registry of the Court | $10,240.14 |

CP at 136-37. In other words, following *Zink* I, the total costs awarded by this court and the trial court totaled $10,240.14. The City, having already paid money into the court

registry for the reversed attorney fee award, asked the court clerk to reallocate that money to cover the total awarded costs. This had the effect of satisfying the City's cost obligations, however, the City remained liable for the attorney fees in an amount that had yet to be determined.

Then, on July 18, 2023, following the special hearing on the attorney fees issue, the trial court entered an amended judgment awarding $16,541.75 in attorney fees, and ordering interest to accrue at a rate of 12 percent dated back to the date of the original judgment, January 18, 2018.

The City contends the trial court was not permitted to award any interest on the amended attorney fee award because it had previously paid money into the court registry. But the City's payment ultimately covered only the costs awarded by this court and the superior court. At the time of payment, the amount of attorney fees on remand had not been decided.

The City offers no authority that would prohibit the trial court from awarding interest on the amended attorney fee award or that generally supports its unclear argument. Where no authority for an assertion is made, we may presume none exists. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). On the other hand, RCW 4.56.110(6) mandates that "judgments shall bear interest from the date of entry." Thus, as noted above, the trial court was and is authorized to award interest on the amended judgment beginning on the date of its entry, July 18, 2023.

The City cites to the unpublished case *Khalid v. Citrix*,[3] for the proposition that "[w]hen the funds are available and would be released unconditionally, the payment has been made." Br. of Appellant at 21. Next, the City cites to *Lindsay v. Pacific Topsoils, Inc.*,[4] for the proposition that "[a]ll amounts awarded were paid without conditions." Beyond those propositions, the City offers no explanation of those cases or how they apply here. This inadequate briefing and argument are not enough to warrant our consideration. *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").

The City's tender of payments that covered costs was not tender of full payment of the as-yet-to-be determined judgment for attorney fees and did not stop the accrual of interest on the judgment for attorney fees.

We affirm the attorney fee award of $16,541.75, but reverse the award of interest dating back to and accruing from the date of the original verdict on January 18, 2018, and

---

[3] No. 82822-3-I (Wash. Ct. App. Jan. 31, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/828223.pdf.
[4] 129 Wn. App. 672, 120 P.3d 102 (2005).

remand with instructions to calculate interest on the attorney fee judgment accruing at 12 percent annum from the date it entered the amended judgment on July 18, 2023.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Pennell, J.

21